J. M. & J. C. ALEXANDER, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.)

1. The disability of the plaintff to sue should be set up at the first term, and before pleading to the merits.

Alexander *vs.* The State of Georgia.

2. The governor has authority to institute suit for the recovery of money of which the state has been defrauded, under the general power granted to him of supervising the property of the state.

3. Where a declaration in favor of the state is signed by attorneys, the legal presumption, upon demurrer, is that they had the authority of the governor to institute the suit.

4. Though the bill of particulars charged the defendants with gross amounts, yet, no objection having been made thereto, it was competent to prove the various items composing the same.

5. Where a recovery is sought from a firm on account of various frauds perpetrated by one of the partners in the firm name, and one of the transactions in which such partner fraudulently obtained a large sum of money from the plaintiff, was conducted in his own name, yet was so interwoven with other frauds pepetrated in the firm name as to render its explanation necessary to the elucidation of the former, such transaction may be shown, even though the firm be not liable therefor.

6. Where a member of a firm colluded with a third person to defraud the plaintiff, and the plaintiff recovered judgment against such third person for various sums of money of which she had been thus defrauded, and subsequently brought suit for the same money against the firm, such judgment, in the absence of any evidence of its payment, is immaterial testimony.

7. The state can only be estopped from asserting her right to her own property by legislative enactment or resolution.

8. Where money was fraudulently obtained by a partner in the name of the firm, and in business transactions such as the firm usually engaged in, from the state, the firm would be liable therefor, even though such fraudulent conduct was unknown to the other partner. If the officer or agent of the state paying the money, knew that such partner was acting in violation of his duty to the firm, the latter would not be liable.

9. The firm would not be liable for money fraudulently obtained from the state by such partner in a matter having no connection with the ordinary business of the partnership, and of which it did not receive the benefit.

Pleadings. Parties. State. Governor. Attorney and client. Presumptions. Evidence. Estoppel. Partnership. Fraud. Before Judge HOPKINS. Fulton Superior Court. April Term, 1875.

The state of Georgia brought complaint against J. M. & J. C. Alexander on an account for money had and received. To the declaration was attached the following bill of particulars :

Alexander *vs*. The State of Georgia.

| | | |
|---|---|---|
| 1870. December 16th. To cash from treasury of Western and Atlantic Railroad | $1,648 | 81 |
| "      December 27th. To cash from treasury of Western and Atlantic Railroad | 3,097 | 61 |
| "      December 27th. To cash from treasury of Western and Atlantic Railroad | 5,995 | 40 |
| "      December 27th. To cash from treasury of Western and Atlantic Railroad | 5,178 | 15 |
| 1871. January 19th. To cash from treasury of the state | 5,995 | 40 |

$21,915 37

The declaration was signed by no official of the state, but simply by several members of the bar, as " plaintiff's attorneys."

The defendants pleaded the general issue, and that the transactions complained of were not those of the firm, and were unknown to J. M. Alexander. J. C. Alexander pleaded specially, that in consideration of his testifying in behalf of the state in reference to the frauds perpetrated against the Western and Atlantic Railroad, whenever required by the proper authorities, and of his repaying to the state all the money he had fraudulently collected, to-wit: $3,950 00, a committee of the legislature and Linton Stephens, Esq., who was charged with the prosecution of said frauds, discharged and released him from all liability on account of the matters complained of in plaintiff's declaration.

After the above pleas were filed, at the trial term, defendants demurred to the declaration because there was no law, general or special, authorizing the suit. In connection with the demurrer, defendants moved that counsel for plaintiff be compelled to show their warrant of attorney to institute the suit. The demurrer and motion were both overruled, and this decision is made the basis of the first two grounds of the motion for new trial.

In connection with this ruling it had best be stated that the record discloses that the following telegram was introduced in evidence at some time during the trial, probably on the argument of the aforesaid demurrer and motion:

Alexander *vs.* The State of Georgia.

"BRADFORD, CONN., August 17th, 1871.

" To Hon. George Hillyer, for Board :

" Your dispatch of the 16th, received.   If any authority is necessary from me, your board are hereby invested with all the authority I have in the premises.   I had [previously obtained intimation of serious misdoings, and instructed Mr. Blodgett to make thorough investigation, and if guilty parties could be ascertained, to secure immediate restitution of the money, and prosecution of the persons engaged in the fraud.   I would therefore suggest that you confer with Mr. Blodgett on the subject.

(Signed)                              " RUFUS B. BULLOCK, *Governor.*"

The Hon. George Hillyer, to whom this dispatch was addressed, was one of the attorneys whose name was signed to the declaration.

It was shown by the plaintiff that from February, 1870, to December of the same year, including the latter month, there was paid by the Western and Atlantic Railroad to J. M. & J. C. Alexander, $20,877 63, whilst the books of said firm only show sales to said road from December 1st, 1869, to December 30th, 1870, amounting to $11,046 72, which were paid for in cash, $9,726 70, and in merchandise, $1,320 02. Deducting the amount of goods actually sold from the amount for which payment was made, leaves overpayment of $9,-830 91.    Deducting from this $3,950 00, which the evidence disclosed was returned by J. C. Alexander to the state, leaves $5,880 91.

In the course of the examination of I. P. Harris, the former treasurer of the Western and Atlantic Railroad, plaintiff proved by him the payment to J. M. & J. C. Alexander of the second amount specified in the bill of particulars. This sum of $3,097 61 was composed of two separate bills in favor of the defendants against the road, the first for $1,153 20, approved by E. F. Blodgett, general purchasing agent, and receipted by J. C. Alexander; the second for $1,944 21, audited by Mr. Hotchkiss, the auditor of the road, and approved by Fry, purchasing agent.    The witness testified that these two items were embraced in one bill which was passed by the auditor, and that one warrant for the entire amount was issued ; that the consolidated bill was receipted by J. M. & J. C. Alexander, in the handwriting of the latter.

To this evidence, together with the papers supporting the same, the defendants objected, because the two items aforesaid were not declared on in the bill of particulars. The objection was overruled, and this constitutes the third, fourth and sixth grounds of the motion for new trial.

The plaintiff offered in evidence the following papers :

1st. Sight draft by McEwen, Grant & Company on treasurer of Western and Atlantic Railrdad, in favor of J. M. & J. C. Alexander, for $5,995 40, dated New York, December 7th, 1870, across the face of which was written "Motive power. Audited for pay at thirty days. December 10th, 1870." Signed "N. P. Hotchkiss, auditor.".

2d. Four itemized accounts against Western and Atlantic Railroad in favor of McEwen, Grant & Company, of New York, aggregating $5,995 40.

3d. Authority from McEwen, Grant & Company to J. C. Alexander to receipt for executive warrant for $5,995 40, the same being amount of audited claim in their favor by commissioners, of date March 13th, 1871.

4th. Award of commissioners appointed under act of October 24th, 1870, authorizing lease of Western and Atlantic Railroad, as follows :

"McEwen, Grant & Company *vs*. Western and Atlantic Railroad.

"Claim for railroad supplies, $5,995 40.

"The above claim audited and approved for the sum of $5,995 40. Pay J. C. Alexander. April 19th, 1871.

(Signed)          "Benjamin Conley,
                "George Hillyer,
                      "*Commissioners.*

"Judge Walker did not preside in this case. By the Board.
         (Signed)         "A. B. Culberson, *Clerk.*"

5th. Executive warrant of R. B. Bullock, governor, in favor of McEwen, Grant & Company, or bearer, for $5,995 40 on state treasurer, to account of 8th section of act of 24th October, 1870, authorizing lease of Western and Atlantic Railroad, dated April 28th, 1871, and approved on same day by the comptroller general.

Alexander *vs.* The State of Georgia.

All of the testimony was objected to, as it tended to show the individual transactions of J. C. Alexander. The objection was overruled, and this constitutes the fifth ground of the motion for a new trial.

In the progress of the trial the defendants offered in evidence the record of a judgment in favor of the state, on the information of C. P. McCalla, against Joseph Fry, in which suit were embraced the various items now sought to be recovered from them. Fry was the clerk of E. F. Blodgett, the purchasing agent of the Western and Atlantic Railroad, and the accomplice of J. C. Alexander in the frauds perpetrated. On objection of plaintiff the evidence was excluded, and this ruling is assigned as error.

The defendants offered to show by George Hillyer and Richard H. Clark, conversations between them and Linton Stephens, Esq., in which it was claimed that he, as the attorney of the state, admitted a promise, for the considerations mentioned in the plea of J. C. Alexander, to save the latter harmless, civilly and criminally, on account of frauds perpetrated by him on the Western and Atlantic Railroad. The testimony of Clark would have extended the promise specifically to this case.

Mr. Stephens was retained by the governor under resolution of the general assembly, approved January 20th, 1872, authorizing the employment of an attorney " whose duty it shall be to cause to be brought in the proper court, all suits which may be necessary to the recovery of all property or money which has been illegally and fraudulently converted, belonging to said road (Western and Atlantic,) or the state, and cause to be prosecuted all persons who may be guilty of violating the criminal laws of the state, in any manner connected with the management of said road; and the said attorney, under the advice of the governor, shall take the entire control and direction of said suits and prosecutions," etc.

The evidence was excluded on objection of plaintiff, and this ruling forms the basis of the ninth and tenth grounds of the motion for new trial.

Much other testimony was introduced, not material here. The substance of it was that J. C. Alexander, by collusion with Fry, and probably with others connected with the Western and Atlantic Railroad, defrauded said road out of large sums of money. These frauds were perpetrated by presenting bills in the name of the defendants, for articles which had never been delivered to the road, or which, if delivered, had already been paid for. The bills were generally receipted in the name of the defendants, sometimes in the name of J. C. Alexander alone. The books of defendants did not show any of these fraudulent transactions. J. M. Alexander denied any knowledge of the illegal dealings by his partner, in the name of the firm, with the road. As to the claim in favor of McEwen, Grant & Company, passed by the commissioners and settled by executive warrant, the evidence showed that it had previously been paid on the draft in favor of defendants. This payment was also a fraud as the road was not then indebted to any such firm as McEwen, Grant & Company. Most of the bogus bills were paid to Fry, sometimes in the presence of J. C. Alexander.

The remaining facts, so far as material, are reported in the decision.

R. H. CLARK; GARTRELL & STEPHENS, for plaintiffs in error.

N. J. HAMMOND, attorney general; HILLYER & BROTHER, for the state.

WARNER, Chief Justice.

This was an action brought by the plaintiff against the defendants as partners in a mercantile firm in the city of Atlanta, in the statutory form, to recover the sum of $21,915 37, with a bill of particulars annexed. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the plaintiff for the sum of $11,859 93 principal, and $3,335 05 for interest, against both defendants; where-

Alexander vs. The State of Georgia.

upon they made a motion for a new trial, on the several grounds therein set forth, which was overruled, and the defendants excepted.

1. The demurrer to the plaintiff's declaration, on the ground that the governor had no authority to institute the suit in behalf of the state, was properly overruled. The disability of the plaintiff to sue was not objected to until after the defendants had pleaded to the merits of the action, and if good, should have been taken advantage of at the first term by plea in abatement.

2. But we do not think the objection would have been good at any time. The governor had the power and authority to institute suit against the defendants, under the general power granted, of a general supervision over all property of the state, with power to make all necessary regulations for the protection thereof when not otherwise provided for, and to engage the services of any competent person for the discharge of any duty required by the laws, and essential to the interest of the state, or necessary in an emergency to preserve the property or funds of the state: Code, sections 61–74.

3. The legal presumption was, at least, upon demurrer, that the attorneys, whose names were signed to the writ, had the authority of the governor to institute the suit.

4. There was no error in admitting the evidence of Harris to prove the items of $1,153 20 and $1,944 00. The declaration and bill of particulars charged gross amounts, and the items sought to be proved were a part thereof; there was no objection to the declaration and bill of particulars, that it was not sufficiently specific, at any time before the trial.

5. There was no error in admitting in evidence the award of the auditing board and accompanying papers, inasmuch as the same constituted a part of the transaction under investigation and connected with it.

6. There was no error in rejecting the record of the judgment against Fry, for the reason it did not appear that any part thereof had been paid.

7. There was no error in refusing to allow the testimony of

Hillyer and Clark as to the promise made by Judge Stephens not to proceed against the defendant, J. C. Alexander, inasmuch as Judge Stephens had no authority to bind the state, even if he had made such promise. As a question of law, the state is not bound nor estopped from asserting her rights to her own property, unless it be done in her sovereign capacity by a legislative enactment or resolution.

It appears from the evidence in the record that the defendants, as partners, did quite an extensive business with the Western and Atlantic Railroad, selling it goods from time to time, and receiving payment therefor, and that J. C. Alexander was the active member of the firm in selling the goods and receiving payment from the treasurer of the road ; that at the time the bogus bills in favor of the firm were paid by the treasurer of the road, he had no reason for knowing that the same were not genuine bills, but paid the bogus bills when presented for payment, in the same manner as he paid the genuine bills due to the firm. There can be no doubt, from the evidence in the record, that the partnership firm of J. M. & J. C. Alexander, were engaged in the business of selling goods to the Western and Atlantic Railroad and receiving payment therefor from the treasurer of the road, and there is just as little doubt, from the evidence, that J. C. Alexander, one of the partners, whilst engaged in that business, fraudulently duplicated accounts, and by other fraudulent means received a large amount of money from the treasurer of the road, for which no goods were ever sold or furnished. J. M. Alexander was about the store, and usually ordered the goods, and knew they were selling goods to the Western and Atlantic Railroad. In view of the evidence in the record the court charged the jury as follows :

"This suit is brought by the state of Georgia for the purpose of recovering the sums of money named in the bill of particulars which you will find attached to the declaration.

"The plaintiff claims that the defendants, J. M. & J. C. Alexander, received those sums of money from it; that they received this money without consideration, and that it should

be returned. The defendants deny that they are liable for any of it. The plaintiff claims that this money was paid from the treasury of the Western and Atlantic Railroad to the defendants, and that the money belonged to the state of Georgia. Money held in the treasury of the Western and Atlantic Railroad by its treasurer, for the purposes of the railroad, was the money of the state of Georgia.

"If you find, from the testimony in the case, that a portion of the money thus held in the treasury of the Western and Atlantic Railroad, was paid to the defendants, J. M. & J. C. Alexander, on account of articles or goods which were claimed to have been sold or furnished by them to the road, but which, in fact, were not sold or furnished, and the money was paid to them without consideration, the state would have the right to recover it from them in this suit. If (to repeat the proposition) you find from the testimony in the case, that the money of the state, thus held in the treasury of the Western and Atlantic Railroad was paid to defendants, J. M. & J. C. Alexander, for goods or articles they claimed to have delivered to the road, but which were not, in fact, furnished, and the money was paid without consideration, the state would have the right to recover in this suit. It is claimed in this case that fraudulent claims were made, in the name of J. M. & J. C. Alexander, on the officers and agents of the Western and Atlantic Railroad for goods furnished, and that the claim was false and the goods were not furnished, and that on that account the money was paid. The defendants deny the charges, and say they are not liable at all. This is the question you are called to determine by your verdict.

"It has been said that if money was paid improperly from the treasury of the road, that it was not paid to J. M. & J. C. Alexander, and that no money, thus paid, ever went into the hands of the firm; if any such payment occurred, that it was the act of J. C. Alexander, for which the firm is not responsible; about that, I will now instruct you. I have already stated, in general terms, if certain things took place, the firm would be liable.

"The question you now have to consider is, to what extent the defendants in this case, J. M. & J. C. Alexander, are bound by the acts of J. C. Alexander. Look to the testimony in the case, and see, first, what the partnership business of J. M. & J. C. Alexander was; what was the scope of the partnership business; what was their business, their real business transactions; ascertain from the testimony what that was, so as to be able to determine when an act was within the scope of that legitimate partnership business. After having ascertained that, proceed under this rule: For the acts of J. C. Alexander, within the scope of the partnership business, within the ordinary business transactions of the firm, and under color of and in the name of the partnership, the firm would be liable, if the officer from whom the money was obtained had no knowledge or notice that J. C. Alexander was acting in violation of his duties and obligations to the firm. For his acts within the scope of the ordinary partnership business of the firm, done in the name of the firm, under color of the partnership, the firm would be liable if the officer paying the money had no knowledge or notice that he was acting in violation of his duties and obligations to the firm. If he was acting in violation of his duties to the firm, and the officer of the state paying the money had notice or knowledge of that at the time he paid the money, then the firm would not be liable for it. To apply the rule to this case; if you should find, from the testimony, that Fry was an agent, purchasing agent or other agent, of the Western and Atlantic Railroad, that bills were made out in the name of J. M. & J. C. Alexander, or claims were presented in their name for or by the party, J. C. Alexander, for articles purporting to have been furnished for the use of the road, and on that claim or claims in the name of the partnership, payments were made by the treasurer or other officers of the Western and Atlantic Railroad, and the officers withdrawing money from the treasury, and paying on that claim, had not knowledge of its true character, the firm would be liable.

"This same rule will apply if payment is made from the

Alexander *vs.* The State of Georgia.

treasury of the state, if such payment was made to one of the firm or one acting under their authority. The firm, or either member of the firm, would have the right and power to appoint another to receive the money thus claimed for either of them, if it was for the benefit of the firm ; and if Fry was appointed by the firm or a member of it, for the purpose of receiving money from the treasury of the road on claims of this character, it would stand just as if it had been received by a member of the firm, and the firm would be liable, or not liable, under the rules I have given you. Gentlemen, if you have any difficulty in understanding me as I go along, I hope you will let me know, as I wish you to understand me. (A pause, no answer.) It is not absolutely necessary to a recovery on the part of the state that the money obtained should have gone to the use of the firm ; what is necessary is that it should have been collected without consideration by a member of the firm, under color of the firm name, acting apparently within the legitimate scope of the partnership business, and without notice that the member was violating his duty to the firm, to the officers by whose act the money was taken from the state road treasury, and delivered to defendants, or either of them, or their agent. For articles or goods that were in fact furnished, money could be properly paid, and when thus paid, it could not be recovered in this suit to the extent that it may appear from the testimony in the case ; if there was valuable consideration for the money paid, it could not be recovered. If you find that plaintiff has no right to recover in this case, and payment has been made for all claims due, to that extent the verdict should be lessened. If you find that payment has been made for all claims due the state, find for the defendants. If partly satisfied, verdict should be for balance due.

" It has been said in this case that because of a transaction with one Charles P. McCalla, the claims of the state of Georgia, if it had any against the firm of J. M. & J. C. Alexander was settled, and that transaction operates as a bar to the recovery in this case; and it is claimed that by virtue of an executive order McCalla was agent of the state, and had the right to

make settlement of these claims, and that he did make it with J. C. Alexander, and that operated as a satisfaction against the firm. By the terms of this executive order, McCalla would proceed to bring up the accounts, etc. (Reading executive order.) This executive order did not confer on McCalla the power to make the alleged settlement with J. C. Alexander, and to release him from any claims the state might have against him; an agent must act within the scope of his powers, when he does that, as a general rule, his principal is bound; under this executive order it did not extend so far as to authorize him to accept from J. C. Alexander a sum of money in satisfaction of these claims.

"It is claimed that one Hargroves, who, it is said, was one of the attorneys of the state in this case, was party to the arrangement with J. C. Alexander and McCalla, and because of his position as attorney of record in the case, the settlement, if one was made, has force and is binding, and for that reason there can be no recovery. If Hargrove, whose signature appears, was attorney for McCalla, and not for the state, he only can represent his principal, and not the state, and his signature would not bind the state. If he was attorney of the state to represent this case, he was not authorized by law to accept, in satisfaction of any debt that was due from J. M. & J. C. Alexander, any less amount than was due in satisfaction of those claims. It will be your duty to take the testimony and give it a careful, impartial consideration. If you find in favor of plaintiff, express the amount; if in favor of defendants, say, we, the jury, find in favor of defendants. If you find in favor of plaintiff, look to the papers for the time suit was commenced; interest can only date from that time."

What is the legal *status* of this case when stripped of all irrelevant matters, and reduced to its simple elements? It is an action brought by the plaintiff to recover from the defendants, as partners, a sum of money which the plaintiff alleges they have fraudulently received from it, without consideration. The defendants admit that at least a part of the money claimed was procured from the plaintiff by the fraud of one

of the partners, J. C. Alexander, but insist that he is alone liable for the fraud, and not the other partner, and that is the real question in the case. There was a good deal said on the argument about the state being bound by the promises made by certain parties, to the defendant, J. C. Alexander, and about accord and satisfaction, and settlement, etc. To all of which, we reply, as we have already said, that the state is not bound or estopped from asserting her rights to her own property, otherwise than by some act in her soverign capacity. It is not to be presumed however, that she will do or has done injustice to any of her citizens.

8. We will first consider the question as to the liability of the partnership, for the money fraudulently obtained from the Western and Atlantic Railroad by J. C. Alexander, one of the partners. The 1915th section of the Code declares, that all the partners are responsible to innocent third persons for damages arising from the fraud of one partner in matters relating to the partnership. The 1916th section declares that partners are not responsible for *torts* committed by a copartner. So far as the evidence shows, the state is an innocent third party, her treasurer of the Western and Atlantic Railroad, from whom her money was obtained by the fraudulent conduct of J. C. Alexander, had no knowledge that he was acting fraudulently and not in the regular and legitimate business matters relating to the partnership, when the money now sued for was paid to him as one of the partners of that firm, with whom it was then, and had been for a considerable time, dealing. It was insisted on the argument, that although the conduct of J. C. Alexander in obtaining the money may have been a fraud, yet it was more than a fraud, that it was a crime punishable by law, and that one partner is not responsible for the *torts* or crimes committed by a copartner. The reply is, that the plaintiff is not seeking to make J. M. Alexander criminally responsible for the *torts* or crimes of his copartner, J. C. Alexander, but is seeking to make him responsible, on the civil side of the court, for the damages sustained in consequence of the *fraud* of his co-

partner, J. C. Alexander, whilst engaged in matters relating to the partnership, that is, when acting within the scope of the copartnership business. One copartner is not responsible and liable to be punished on the criminal side of the court for the *torts* or crimes of his copartner, unless he has participated therein, and that is the true intent and meaning of the provisions of the Code. In regard to the liability of one partner on the civil side of the court for the fraud of another partner in the course of the transactions and business of the partnership, the rule is so clearly stated in Story on Partnership, that we extract the entire section in which the rule is stated, and the reasons for it: "The principle extends further, so as to bind the firm for the frauds committed by one partner in the course of the transactions and business of the partnership, even when the other partners had not the slightest connection with, or knowledge of, or participation in the fraud; for (as has been justly observed) by forming the connection of partnership, the partners declare themselves to the world satisfied with the good faith and integrity of each other, and impliedly undertake to be responsible for what they shall respectively do within the scope of the partnership concerns. Hence, if, in the business of the partnership, money is received partly by one of the firm, and partly by another, to be laid out upon a mortgage, and a mortgage is forged by one partner without the knowledge of the other, the innocent partner will be liable for the whole money. So, if representations of certain facts as existing are fraudulently made by one partner, unknown to the others, in the partnership business, and the facts never existed, but the whole statement is a mere fiction, the firm will be bound to the same extent as if it were true and the facts existed. This whole doctrine proceeds upon the intelligible ground that where one of two innocent persons must suffer by the act of a third person, he shall suffer who has been the cause or occasion of the confidence and credit reposed in such third person:" Story on Partnership, section 108. The same author (section 168) in relation to the knowledge of the acts of one partner by another partner, thus states the rule: "In

respect to what acts of one partner the others will and ought to be held to have notice of, so as to bind them all by implied consent or acquiescence, it may be laid down as a general rule, for the protection of those who deal with partners, that all of the partners have such knowledge and notice of the acts of any of their partners relative to their business, as in discharge of their plain duty they might or ought to have obtained." We find no error in the charge of the court in relation to the liability of the defendants as partners, so far as the money fraudulently received from the treasurer of the Western and Atlantic Railroad is concerned, and there is sufficient evidence in the record to sustain the verdict as to that branch of the case.

9. But the claim of McEwen, Grant & Company for $5,995 40, which was allowed by the auditing board of commissioners, and directed to be paid to J. C. Alexander, and which was paid by the state treasurer, on an executive warrant, stands upon an entirely different footing as to the liability of the copartnership firm of J. M. & J. C. Alexander to pay it. There is no evidence that the copartnership had any dealings with the auditing board in the sale of goods or otherwise, but, on the contrary, the evidence shows that the draft and the bills on which it was founded, were fabricated by J. C. Alexander and Fry, wholly outside of and having no connection whatever with the business of the mercantile firm of J. M. & J. C. Alexander, and did not purport to have any connection with the business of that firm, nor does it appear that firm received any part of the proceeds thereof. In our judgment, so much of the verdict as found the sum of $5,995 40, the amount of the McEwen, Grant & Company draft, which was allowed by the auditing board, and paid out of the state treasury, against the defendants, as partners, was contrary to law and the evidence.

We therefore reverse the judgment of the court below in overruling the defendant's motion for a new trial, unless the plaintiff shall write off from the verdict the sum of $5,995 40, with the interest on that amount; and in the event the plain-

tiff shall do so, then the judgment of the court below will stand affirmed.