### 31115, 31120. PEACH MOTOR EXPRESS COMPANY
*v.* SALMON; *and vice versa.*

DECIDED MAY 10, 1946.

*Graham Wright,* for plaintiff.

*Matthews, Owens & Maddox,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) ■ Was the allowance of the amendment to the original petition error? The written objections to such allowance alleged: "1. That there was not enough in the original petition to amend by, for the ■

reason that in the original petition there was a misjoinder of causes of action, in that the plaintiff was seeking to set up a cause of action based in trover, and another cause of action stated against the codefendant, Milner Motor Company, was based upon an illegal use of process or the use of an illegal process, and further that there was a misjoinder of parties defendant for the reason that there is no allegation in said petition showing any connection, conspiracy, collusion, or other action in common between the two parties named in said case." Paragraph 2: "That said amendment seeks to set up a new and distinct cause of action from that set out in the original petition."

In the brief of counsel for Salmon it is alleged that the amendment should have been disallowed because the original petition failed to show "any joint or concerted action by the two named defendants which would authorize the bringing of this action against both of them, and that it was an effort by the plaintiff to set forth in one count of the petition two separate and distinct causes of action;" and therefore the original petition was subject to general demurrer and could not be amended. Counsel cite in support of their contention *Lovell* v. *Drake, 60 Ga. App.* 325 (3 S. E. 2d, 783), where this court held that "the court did not err in sustaining the demurrer as to a misjoinder of causes of action, and in dismissing the action." That decision, however, does not support the contention that the original petition was subject to general demurrer and could not be amended to cure any defect pointed out by special demurrer. In that case, the plaintiff was given an opportunity to amend her petition and did amend it, and this court held in effect that the amendment did not cure the defects pointed out by the demurrers, and that the trial court did not err in dismissing the action. In the instant case, the original petition was amended and the amendment cured its defects. The ruling in the *Lovell* case is not in conflict with our ruling here. None of the cases cited in that decision hold that such a petition can not be amended. "A general demurrer does not raise questions as to multifariousness, duplicity, or misjoinder of causes of action, or as to nonjoinder or misjoinder of parties. As to such matters, a special demurrer is necessary." *Grant* v. *Hart, 192 Ga.* 153 (4) (14 S. E. 2d, 860). And, under numerous and repeated rulings of the Supreme Court and this court, a petition

may be amended to cure a defect therein pointed out by a special demurrer. The allowance of the amendment was not error.

■ After the plaintiff had presented its evidence, counsel for the defendant moved for a nonsuit, on the ground "that the evidence shows that the only possession was the possession of Harry's Auto Parts, which is a partnership composed of Harry and Bill Salmon, and this suit is brought against Harry Salmon individually." The court granted the nonsuit upon that motion, and in the brief of counsel for the defendant. it is stated: "It is true that the defendant, Harry Salmon, testified that he purchased the property [in question] at the sheriff's sale, but that in doing so he was acting for and in behalf of Harry's Auto Parts, which is a partnership composed of him and his brother. He was not purchasing the property individually, but for the partnership. Under these circumstances, when he received possession of the property he was doing so as the partnership, and any subsequent resale of the property was a conversion on the part of the partnership and not an act of Harry Salmon. It was upon this theory that the judge granted a nonsuit." We cannot concur in that theory. Harry Salmon was called to the stand by the plaintiff for cross-examination, and testified: "I did have in my possession the trailer involved in this case. I bought it from the sheriff right around here at the courthouse. . . I sold that trailer the same day I bought it. . . I did not buy it individually, I bought it for Harry's Auto Parts, that is me and my brother Bill doing business as Harry's Auto Parts." The defendant's contention is that, since he was not acting as an individual but for the partnership, he was not liable, and that an action against him alone could not be maintained.

In *Rogers* v. *Carmichael,* 184 *Ga.* 496 (192 S. E. 39), the court (in a unanimous decision) said: "The difficulty in the present case relates to the construction of the first sentence in section 75-308, that 'Partners shall not be responsible for torts committed by a copartner.' This statement appears to have been placed in the Code of 1863 by the codifiers, and has been carried in the same language in all the subsequent Codes. That Code having been adopted by the General Assembly, the provision should be treated as a legislative declaration, having the force of statute (*Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (5), 31

S. E. 531, 42 L. R. A. 518) ; but this does not necessarily mean that a partnership is not liable for the torts of one of the partners committed within the scope of the partnership business. The statement must be given a reasonable construction; and in arriving at its meaning several considerations must be observed, including a study of cognate sections and common-law principles. In an editorial note in Michie's Code (1926), it is stated that this section is a marked departure from the rule in most jurisdictions, and does not seem to be founded on sound principle, in that it disregards entirely the well-settled rule that a partner is an agent of the partnership. This, however, was to construe the section as implying that the partnership is not responsible for torts committed by a partner in pursuance of the partnership business. The editor proceeds to illustrate the unsoundness of such a construction by stating: 'And yet, if the tort is committed by an agent instead of a partner, the partnership is liable. For instance, if partners engaged in a small grocery business, should hire a driver of their delivery-wagon, the partnership would be liable to a person injured by his negligent driving. But apparently it would not be liable if a partner were driving.' . . It would be wholly illogical to say that a partnership is liable for a tort committed by an employed servant or agent in obeying instructions from a partner, and then to deny liability if the partner himself had done the very thing which he had instructed the agent or servant to do. And what reason is there for saying that the partnership is liable for the fraud of one of the partners in matters relating to the partnership, and not liable for other torts arising in like manner? Again, there would seem to be even stronger reason for holding the partnership liable for a tort committed by a partner in pursuance of the partnership business than for sustaining such liability for the tort of an agent or servant, since a partner is an alter ego of the firm, usually having larger powers than a mere servant or agent. While there is no previous decision so stating in express terms, we lay it down as a truism, that, under the English common law, a partnership and each member thereof was liable for a tort committed by a copartner acting within the scope of the firm business, and that such liability was not dependent upon the personal wrong of the other members of the partnership." And in that decision the court held that that part of the English common law

was of force in this State, despite the provisions of § 75-308 of the Code. Under the above-quoted ruling and the facts of the instant case, the partnership and the two partners were liable for the tort committed by Harry Salmon, one of the partners, in the conversion of the plaintiff's property, and the plaintiff had the right to sue all three of them, or any one of them; and, especially, to sue Harry Salmon, the partner who actually committed the tort. The undisputed evidence disclosed that he committed the tort, not as an individual, but as a partner and agent of the partnership; and, necessarily, that in doing so, he was acting within the scope of the firm's business. The evidence for the plaintiff made out a prima facie case, and the granting of a nonsuit was error.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. MacIntyre and Gardner, JJ., concur.*