**HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff,**

v.

**Marvin S. HARTLEY, Receiver of Thompson Banking Company of Wrens, Georgia, Defendant.**

**Civ. A. No. 2175.**

United States District Court
M. D. Georgia,
Macon Division.

March 15, 1967.

A. Rowland Dye, Lawton Jordan, Jr., Augusta, Ga., for plaintiff.

Cubbedge Snow, Macon, Ga., Thomas A. Hutcheson, Sandersville, Ga., for defendant.

BOOTLE, Chief Judge:

### I.

This is a ruling on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The plaintiff filed an action for declaratory judgment seeking adjudication on several questions. One issue is the validity *vel non* of the status of the above named defendant as the Receiver of a private, unincorporated bank for the purpose of filing a claim against the plaintiff on a banker's fidelity bond. Another issue is the validity *vel non* of the bond. The last is for a declaration of the rights and liabilities of the parties in relation to each other, if any.

After filing a motion to dismiss, which was overruled, the defendant filed his defense and a cross action. In the cross-action defendant contended that plaintiff had admitted that certain defalcations had taken place and he prayed for payment for losses covered under the bond, for damages of an additional twenty-five percent for bad faith and for reasonable attorneys' fees.

The plaintiff filed its defenses to the cross-action and then moved for summary judgment.

### II.

The following facts are derived from the pleadings, admissions in the answer, answers to interrogatories, and affidavits:

On December 28, 1950 one W. E. Thompson, Jr., his mother, Mrs. W. E. Thompson, Sr., and his sister, Mrs. Sybil T. Robertson, entered into a partnership agreement for the operation of the Thompson Banking Company (an unincorporated private bank) of Wrens, Georgia. Under the terms of the agreement Mr. Thompson was to "conduct, manage, and operate" the bank.

Following this agreement Mr. Thompson, as active partner exercised sole management of the affairs of the bank. The other two partners were "inactive partners" or "partners in name only."

In addition to operation of the bank, Mr. Thompson, as an individual, owned and operated a general insurance agency, d/b/a The Thompson Insurance Agency, in the same town.

One of the insurance companies which the agency represented was the Hartford Accident and Indemnity Company, the plaintiff in this case.

Sometime in August, 1962 Mr. Thompson started misappropriating the funds of the bank and he continued doing so until sometime in February, 1965.

It appears that this defalcation was done with the knowledge and probable assistance of a Mrs. E. R. Jordan, the assistant cashier of the bank.

Prior to December 9, 1963 the bank was covered by a fidelity bond issued by the United States Fidelity & Guaranty Company.

On October 2, 1963 Mr. Thompson, as cashier of the bank, applied through his agency to the Hartford Accident and Indemnity Company for coverage.

At the bottom of the front page of the application for the bond there was provided two blank spaces. The first blank was for the name of the insured and the second blank was for the signature of the officer signing for the insured. Directly above these blanks appeared a paragraph which read as follows:

"The present officers and employees of the Insured, of whom a complete list at this time, with positions held, is attached, have all, to the best of the Insured's knowledge and belief, while in the service of the Insured always performed their respective duties honestly. There has never come to its notice or knowledge any information which in the judgment of the Insured indicates that any of the said officers and employees are dishonest. Such knowledge as any officer signing for the Insured may now have in respect

to his own personal acts or conduct, unknown to the Insured, is not imputable to the Insured bank."

In the first blank appeared the name "Thompson Banking Company." In the second blank appeared the signature "W. E. Thompson, Jr. Cashier". On the back of the application Mr. Thompson was listed as "Pres.-Cashier"; Mrs. Jordan was listed as "Assist. Cashier", and three other persons were each listed as "Clerk".

On December 9, 1963 Hartford issued Bankers' Blanket Bond, Standard Form 24, No. 3614616, the validity of which is one of the issues of dispute in this action. The bond was a "discovery bond" which insured against losses, whenever sustained, if discovered during the period of the bond's protection.

Section 10 of the bond was entitled "TERMINATION OR CANCELATION" and read in part:

"This bond shall be deemed terminated or canceled as an entirety—(a) thirty days after the receipt by the Insured of a written notice from the Underwriter of its desire to terminate or cancel this bond, or (b) immediately upon receipt by the Underwriter of a written request from the Insured to terminate or cancel this bond, or (c) immediately upon the taking over of the Insured by a receiver * * *."

A "discovery rider" attached to the bond dealt with "RIGHTS AFTER TERMINATION OR CANCELATION". The portion pertinent to this case provided that:

"At anytime prior to the termination or cancelation of this bond as an entirety, whether by the Insured or the Underwriter, the Insured may give the Underwriter notice that it desires under this bond an additional period of twelve months within which to discover loss sustained by the Insured prior to the effective date of such termination or cancelation and shall pay an additional premium therefor. If this bond is terminated or canceled as an entirety by reason of taking over of the Insured by a receiver * * * such receiver * * * shall have the rights of the Insured and subject to the same limitations as set forth in this paragraph provided that such rights are exercised by notice to the Underwriter within the thirty days after such Insured is taken over by such receiver * * * and provided, further, that such Insured has not previously exercised such rights. Upon receipt of such notice from the Insured or such receiver * * * the Underwriter shall give its written consent thereto * * *."

The premium for the bond for the period December 9, 1963 through December 9, 1964 was $661.36.

On December 9, 1964 the bond was renewed for another year. The second annual premium was $645.00.

On either April 20, 1965 or May 20, 1965 (conflict in the record) Hartford suspended The Thompson Insurance Agency as its local agent due to the inability to collect the premiums due it by the agency.

In the latter part of July, 1965 Hartford decided to terminate its fidelity bond coverage of the Thompson Banking Company. As a result of this decision on July 29, 1965 a notice of cancellation was prepared and forwarded to Mr. Thompson for his execution. Hartford gave as its reason for requesting such cancellation an unprofitable experience on private banks and a company policy of retiring coverage when the local agency has been closed or suspended.

The notice of cancellation stated " * * * that the undersigned, THOMPSON BANKING COMPANY WRENS, GEORGIA desires to cancel and does hereby cancel a certain PRIMARY BANKERS BLANKET BOND # 24 known as Home Office No. 3614616, * * * such cancelation to be effective from and after 12 o'clock noon standard time of the 13th day of AUGUST, 1965 * * *." It was executed on August 18, 1965 by "THOMPSON BANKING COMPANY by W. E. Thompson, Jr."

On August 23, 1965 Hartford received the executed notice of cancellation. On the same day Hartford notified Mr. Thompson that the return premium of $209.00 was being credited to the agency's account.

On August 25, 1965 the members of the partnership, W. E. Thompson, Jr., Mrs. W. E. Thompson, Sr., and Mrs. Sybil T. Robertson, filed a voluntary application for receivership in the Superior Court of Jefferson County, Georgia, (Case No. 2809). The court appointed Marvin S. Hartley, Sr., the defendant in this case, as the Receiver of the Thompson Banking Company.

The Receiver did not learn of the existence of the bond until "several days" after his appointment. "At about the same time" he learned that there may have been some misappropriation of the bank's funds. He found no evidence at the bank that the bond had been cancelled.

On October 13, 1965 Mr. Thompson died.

On or about October 19, 1965 the receiver actually discovered the losses to the bank.

On December 1, 1965 an officer and an agent of Hartford called on the Receiver. At that time neither the officer nor the agent informed or even suggested to the Receiver, or his attorney who was present, that the bond had been cancelled. The officer did say, however, that any claim against Hartford on the bond would have to be filed within six months from the date of discovery.

On March 6, 1966 the Receiver executed the Proof of Loss form. It was received by Hartford on March 8, 1966.

On April 22, 1966 Hartford commenced this legal action.

### III.

In its brief in support of the motion for summary judgment Hartford contends that the motion should be granted on any one of four grounds:

"(1) The bond is void because Thompson was agent for both parties and did not make a full disclosure of the material facts to his principal, the Plaintiff, in buying insurance to cover his own property.

"(2) The acts for which recovery is sought are not within the coverage provided by the bond because they. were not discovered prior to termination as required by the bond.

"(3) The contract is void and unenforceable as being against public policy because it is an attempt by Thompson to insure himself against his own fraudulent and criminal actions.

"(4) The bond is void because of the failure of the Thompson Banking Company to disclose the fraudulent transactions and because the knowledge of W. E. Thompson, Jr. as to the fraudulent transactions is imputable to the partnership."

The Receiver in his opposing brief argues that the case cannot be disposed of by summary judgment as there are "gaps and skips" in Hartford's response to the notice to produce, the answers to the interrogatories, and the affidavits filed and that these can be cleared up only by oral examination of the witnesses.

His response to Hartford's contention that the bond is void because Mr. Thompson was an agent for both parties is that the bond is not void but is valid as Hartford knew that Mr. Thompson was the agent of the bank as well as its own agent and therefore all of his knowledge is imputed to Hartford.

As to the contention that the bond had been cancelled prior to the discovery of the losses he argues that the cancellation was not effective for two reasons. The first reason is that Mr. Thompson as perpetrator of the defalcations had knowledge of the loss and therefore he did not have the "right" to destroy the rights of the partnership under the bond. But even if he did have the "right" the court should not give effect to the cancellation as it appears that the loss insured against had occurred prior to the cancellation. The Re-

ceiver further argues that since Hartford was the party that decided to cancel the bond that the cancellation was not effective for thirty days and that the Receiver had been appointed prior to that date. In addition the Receiver argues that even if the cancellation was effective the request by Hartford that the Receiver file his claim constituted a waiver of all of the defenses now urged by Hartford. In answer to the contention that the bond is void as contrary to public policy the Receiver argues that it is not an attempt by Mr. Thompson to insure himself against his own fraudulent actions but is a bond taken out by a partnership to insure itself against defalcations by one of its partners (or employees). He argues that the bond is not void because of the insured's knowledge of prior misappropriations by Mr. Thompson and its failure to inform Hartford of this material fact. He points out that there is no evidence that either of the other two partners had any actual knowledge of such misappropriations and that because of a provision in the application for the bond any personal knowledge by Mr. Thompson as to his own misdeeds is not imputable to the insured.

#### IV.

■■ In order to make a ruling on the motion now before the court it must be found from the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that as a matter of law there is no genuine issue as to any of the material facts or circumstances surrounding the issuance and/or the cancellation of the bond in question. Fed. Rules Civ.Proc., rule 56, 28 U.S.C.A. A study of the record reveals that there is no conflict as to any material fact or circumstance and therefore the matter must be determined on the undisputed facts in the record and these must be taken as true. Preveden v. Croation Fraternal Union of America, 120 F.Supp. 33(4) (W.D.Pa.1954).

■ In regard to the Receiver's argument that since there were "gaps and skips" in the response to the motion to produce, answers to the interrogatories and affidavits filed by the insurance company, there should be oral examination of witnesses at a trial, the court feels that a brief in opposition to a motion for summary judgment is not the proper place to make such an objection. If the Receiver was not satisfied with the responses he should have made his objection at the time he received them and not at a time when the court has the merits of the motion under consideration. Also, a mere denial in a brief of the facts without counter-affidavits controverting a convincing showing by the movant is not sufficient to create a real controversy, Bruce Construction Corp. v. U. S., 242 F. 2d 873 (2) (5th Cir. 1957), and the granting of a summary judgment is not improper as unjustly depriving the party of a trial on the merits. Cunningham v. Securities Investment Co. of St. Louis, 278 F.2d 600 (1) (5th Cir. 1960). If any additional showing could have been made to develop material facts other than those now in the record the duty was on the party relying upon those facts to make such disclosure. Chambers & Co. v. Equitable Life Assurance Soc., 224 F.2d 338 (8) (5th Cir. 1955).

■ As this is a diversity action this court must follow Georgia law. Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

#### V.

The first question to be resolved is whether Bankers' Blanket Bond, Standard Form #24, No. 3614616 was a valid contract or was void *ab initio*. The Georgia Code provides that the statements in an application for an insurance policy are to be considered representations and not warranties and they will not prevent recovery under the policy unless they are either: (1) fraudulent; or (2) material to the risk; or (3) unless in good faith the insurer would not have issued the policy, or would not have issued it for that large an amount or for that premium or covered that particular risk, had the true facts been known. Ga.Code Ann. 56–2409. The Supreme Court of

Georgia in the case of Northwestern Life Ins. Co. v. Montgomery, 116 Ga. 799 (2), 43 S.E. 79, (1902) set out the elements of fraud as follows:

> "Where it is shown that a material statement made in such application was false, that its falsity was known to the insured at the time it was made, that it was made with the view of procuring insurance, that the company [insurer] had no notice of its falsity, and that the company [insurer] acted upon it to its injury, the law will conclusively presume an intent to deceive, and a case of actual fraud will be made out, although the insured may not have really intended to prejudice the rights of the company [insurer]."

Also see Franklin Life Ins. Co. v. State Neon Sign Co., 329 F.2d 456 (1) (5th Cir. 1964).

■ The general rule regarding knowledge possessed by only one partner is "that all of the members of a firm may be held liable to a person for loss occasioned by the fraudulent misrepresentations of one member of a partnership * * * in the course of partnership business, to the party so damaged is now settled beyond question, and this whether they had any knowledge of, connection with or participation in the act." Rowley on Partnership, Vol. 1, Ch. 13, p. 370 (2d ed. 1960). This is also the law of Georgia. Ga.Code Ann. 75-307; Alexander v. State of Ga., 56 Ga. 478, 479 (8) (1876).

When the above law is applied to the facts of this case there is no doubt that there was fraud in the application and that the bond was void *ab initio* unless the knowledge of the true facts is not imputable to the firm, or unless the knowledge of the true facts is imputed to Hartford.

■ At first blush it may seem that under the provisions of the application the knowledge of the misappropriations would not be imputed to the firm because of the application provision: "Such knowledge as any officer signing for the Insured may now have in respect to his own personal acts or conduct, unknown to the Insured, is not imputable to the Insured bank." In fact this provision does not really alter or change the prevailing rule in Georgia as to whether or not the knowledge of dishonest acts of a bank officer is to be imputed to the bank. As stated by the Supreme Court of Georgia in Merchants Nat. Bank of Savannah v. Guilmartin, 93 Ga. 503 (1893), on page 509, 21 S.E. 55, on page 57: "Notice to the president of a bank concerning the unworthiness of the cashier of the bank is notice to the bank, *unless the president is an accomplice of the cashier.*" (Emphasis supplied). The state of Maryland has the same rule. Danzer & Co. v. Western Md. Ry. Co., 164 Md. 448, 165 A. 463 (1933). In a recent case in the United States District Court for the District of Maryland, Judge Northrup held that "[t]he general rule [that the knowledge of an officer of a corporation obtained while acting outside the scope of his official duties in relation to a matter in which he acted for himself and not for the corporation, is not, merely because of his office, to be imputed to the corporation] cannot apply where, as here, those who in actuality control the day-to-day operations of the corporation (and who, in actuality, are responsible only to themselves) have undertaken a series of transactions designed to defraud the corporation." Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co. 266 F.Supp. 465, 471, D.Md., July 6, 1966.

■ It is true in our case we are dealing with a partnership and not a corporation, but the reasoning and logic behind the holding may very well apply to both situations. In Peach Motor Express Co. v. Salmon, 73 Ga.App. 816, at page 820, 38 S.E.2d 302, at page 305 (1946) that court said that " * * * a partner is an alter ego of the firm, usually having larger powers than a mere servant or agent." *A fortiori,* this is so where, as here, there is only one active partner and he has sole and complete management of the operations of the

firm. If the dishonesty had consisted of a single act or if all of the partners had been active in the management the argument that the knowledge should not be imputed to the firm may have had some validity. But here it is an undisputed fact that Mr. Thompson had sole and complete control of the operations of the bank and that he also had full knowledge of all of the misappropriations of the funds of the bank, being himself the perpetrator thereof. Therefore, it must be held that his knowledge was the firm's knowledge and this notwithstanding the above quoted provision in the application. Whatever might have been the effect of said provision had there been a number of active partners and had the misconduct of Mr. Thompson been known only to himself, said provision cannot protect the bank here because in the words of the provision the misconduct was not "unknown to the insured." It was abundantly known to the partnership bank because it was perpetrated by the firm's only active managing partner—its alter ego.

 It remains to inquire now whether Mr. Thompson's knowledge is to be imputed to Hartford. The general rule in Georgia is that notice to an agent of any matter within the scope of the agency is notice to the principal, Ga.Code Ann. 4–309; Fowler v. Latham, 201 Ga. 68, 74, 38 S.E.2d 732 (1946), but when he ceases to act for his principal and begins to act in his own best interest or conspire with another to the detriment of his principal his knowledge is no longer imputed to his principal. Ga.Code Ann. 4–310; Morris v. Ga. Loan Co., 109 Ga. 12, 22, 34 S.E. 378, 46 L.R.A. 506 (1899); Union Cent. Life Ins. Co. v. Robinson, 148 F. 358, 8 L.R.A., N.S., (5th Cir. 1906). "[H]e becomes an opposite party." Pursley v. Stahley, 122 Ga. 362, 364, 50 S.E. 139 (1905). The court in Loftin v. Gerat Southern Home Benevolent Assoc., 9 Ga.App. 121, 122, 70 S.E. 353, 354 (1910), said: "The rule of the Code is that 'notice to the agent of any matter connected with the agency is notice to the principal.' * * * This rule

is modified when an agent proves false to his principal, and at the instance of a third party aids in the communication of false reports as to the insurability of an applicant, for the purpose of benefiting the applicant and defrauding his principal." When an agent of an insurance company applies to his principal for insurance upon property in which he owns an interest he is under a duty to act in the utmost good faith and to make a full disclosure of all material facts pertaining to the risk and to fail to do so will amount to fraud and will void the policy. Schrader v. Prudential Ins. Co. of America, 280 F.2d 355 (5th Cir. 1960); McDaniel v. United Ben. Life Ins. Co., 117 F.2d 339 (5th Cir. 1941); Westchester Fire Ins. Co. of New York City v. Fitzpatrick, 2 F.2d 651 (3d Cir. 1924). There is no doubt that Mr. Thompson was an agent of Hartford, that he owned an interest in the property to be insured, and that he did not act in good faith or make a full disclosure of the material facts.

 Normally and where an agent is not becoming false to his principal, if he is at the same time agent for a corporation and a member of a partnership and he makes in his dual capacity a contract between the parties, knowledge possessed by him, though not actually disclosed, will be imputed to both parties. However, if he, though an agent of the corporation makes a contract with the corporation on behalf of the partnership of which he is a member, dealing in the transaction with other officials of the corporation, and not through himself alone, his undisclosed knowledge will not be imputed to the corporation as notice. Taylor v. Felder, 3 Ga.App. 287, 59 S.E. 844 (1907). We may paraphrase the *Taylor* case at 291 of 3 Ga.App. at 845 of 59 S.E. as follows:

If partner Thompson dealt in the transaction with agent Thompson, Hartford would be imputable (sic) with such knowledge as the common agent possessed; but if partner Thompson, though also an agent of Hartford, did not in this transaction

deal with himself, but with some other officer of Hartford, he is to be treated as if he were no agent of Hartford at all.

In the case at bar, while Mr. Thompson was the alter ego of the partnership he occupied a lesser status with Hartford, his role being applying for the bond.

The next question to be resolved is whether the discovery of the loss was made during the coverage of the bond, if in fact the bond was valid as argued by the Receiver.

If his argument is correct that the knowledge of the misappropriations of the funds was not imputed to the bank then it would be inconsistent to argue that the discovery of the losses was made by the bank. Therefore, the discovery was made by the Receiver.

█ One of the arguments concerning the termination of the bond was by whom or by what means it was cancelled. The bond provided for three methods by which it could be terminated or cancelled: (a) by the Underwriter, or (b) by the Insured, or (c) by the appointment of a receiver. Another method recognized by the courts is cancellation by mutual assent. Home Ins. Co. of N. Y. v. Chattahoochee Lumber Co., 126 Ga. 334, 55 S.E. 11 (1906). The bond, in the section entitled "Rights After Termination or Cancelation," also provided a means whereby an additional period to discover loss after termination or cancellation could be had.

█ Here, it makes no difference in which of the four methods the termination occurred; the result is the same. According to the terms of the policy the discovery had to be made prior to the termination, or within the additional period acquired for discovery. The Proof of Loss form filed by the Receiver gives the discovery date as approximately fifty-four days after his appointment. There is no evidence that the bank, prior to the effective date of the termination, or the Receiver, within thirty days after his appointment, requested the additional period. The Receiver learned of the existence of the bond and that there may have been misappropriations within a few days after his appointment. He had ample time to request the additional period.[1]

█ There is no doubt that under the partnership agreement Mr. Thompson had the authority to contract for and to cancel the fidelity bond.

█ There is no evidence, as contended, that Hartford had any knowledge that the bank was insolvent and initiated the cancellation of the bond for that reason. But even if Hartford had possessed such knowledge this would not affect the validity of the cancellation as when the right to cancel has been reserved by the parties they may do so regardless of their reason or motive. Camp v. Aetna Ins. Co., 170 Ga. 46, 152 S.E. 41, 68 A.L.R. 1166 (1929).

█ As to the argument that the court should not give effect to a cancellation when it appears that the loss insured against had occurred prior to the cancellation it is sufficient to point out that the bond in question is a "discovery bond" and that no liability arises at the time of loss (unlike the cases cited).

█ This court can see no merit in the Receiver's suggestion that Hartford has waived, or is estopped to assert, its defenses.

We need not reach Hartford's contention that the bond is void as contrary to public policy. See Bridge Tire Co. v. Mass. Bonding and Ins. Co., 189 Ark. 691, 75 S.W.2d 65 (1934).

## VI.

This court concludes from the undisputed facts that:

1. Bankers' Blanket Bond, Standard Form 24, No. 3614616 was void *ab initio*.

2. Even if the said bond had been valid the discovery of the said bank's losses was made after the effective termination of the said bond.

---

1. However, the request would have been ineffective since the bond was not in force at the time of the Receiver's appointment.

3. The plaintiff, Hartford Accident and Indemnity Company, is not liable to the defendant, Marvin S. Hartley, Sr., Receiver of Thompson Banking Company of Wrens, Georgia, for any sum under said bond.

The court finds the facts to be as stipulated relating to the appointment by the Superior Court of Jefferson County, Middle Judicial Circuit, of Marvin S. Hartley, Sr., as Receiver of the Thompson Banking Company, and finds and concludes that he is the lawfully appointed Receiver of said bank.

This court is inclined to think whatever, if any, premiums on the said bond have been paid by the said bank and received by Hartford and not heretofore returned must now be returned by Hartford to the Receiver. This point has not been covered, however, in the pleadings, affidavits, or briefs. Let counsel confer concerning it. Then if any difference of opinion exists between them let them communicate with the court.

Let counsel for Hartford prepare an appropriate judgment and decree, the same to be settled upon notice.

Judgment affirmed 386 F.2d 435.