## No. 5718.

THE CITY NATIONAL BANK OF FORT WORTH *v.* D. C. MARTIN.

1. BANK—NOTICE.—The owner of a promissory note payable to the paying teller of a bank and indorsed by him in blank, delivered it to such teller for collection, to be held by him as an agent of the bank. The teller collected the money on a check given for it and payable to his bank, and caused the same to be entered on the books of the bank to his individual credit, concealing from the owner the fact that the money had been collected. The teller died insolvent and a defaulter to his bank. No other officer of the bank knew of the acts of the teller in collecting and appropriating the money to his own use. In a suit by the owner of the note against the bank, *held:*

(1) It being shown that the teller had in other transactions made collections for others as an officer of the bank, and the collection being within the scope of his apparent authority, it was immaterial whether the collection was really within the scope of his authority or not, and the bank would be bound by his acts.

(2) The public is not supposed to have notice of the apportionment of duties relating to bank matters among bank officers. The knowledge of its teller in regard to the collection of money must be regarded as the knowledge of the bank, and notice to him is notice to the bank.

(3) When a bank holds out its officer to the public, by his employment, as worthy of confidence, it can not profit by the frauds he perpetrates in the apparent scope of his employment.

APPEAL from Tarrant. Tried below before the Hon. R. E. Beckham.

*Wray & Stanley*, for appellant: The admissions or declarations of an agent will not bind the principal, unless, first, made within the scope of his agency, and second, about and concerning a transaction then depending. (McAlpine v. Cassady, 17 Texas, 466; Wheelock v. Wright, 38 Texas, 496; Cunningham v. Cochran, 18 Ala., 479, Franklin Bank v. Stewart, 37 Me., 519; Hazelton v. Bank, 32 Wis., 35; Story on Agency, sec. 134, et seq.; Greenleaf on Evidence, sec. 113 and authorities there cited; Wharton on Evidence, sec. 1173 and authorities there cited; Evans on Agency, sec. 155 et seq.)

To make declarations or representations of an agent admissible and binding on the principal, they must not have been mere narrations of past events and occurrences, but must have been

made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the true nature and character of the acts they are intended to explain, and so harmonize with them as to constitute a single transaction. (Enos v. Tuttle, 3 Conn., 250; Comstock v. Hodlyme, 8 Conn., 236; Russell v. Frisbie, 19 Conn., 209; Ford v. Haskell, 32 Conn., 492; Rockwall v. Taylor, 41 Conn., 59; Story on Agency, sec. 136, and authorities there cited; Roberts v. Burks, Little's Select Cases, 411, and authorities above cited.)

An agent, by his admissions and declarations, can neither admit away the property of his principal nor charge him with a debt or liability. (Henry v. Bank, 63 Ala., 527; Hodges v. Bank, 22 Gratt., 51; Cunningham v. Cochran, 18 Ala., 479.)

A teller of a banking corporation is an agent with limited powers, whose duties are strictly limited to the specific function of receiving or paying out the funds of the bank, or both, according to his appointment, and the making of the said declarations and statements were wholly beyond the scope of his agency and employment to his principal, the bank. (Walker v. Bank, 5 Mo. Ct. App., 214; Thatcher v. Bank, 5 Sandifer, 121; Mussey v. Bank, 9 Met., 306; Morse on Banks and Banking. full discussion, p. 207, second ed., and authorities above cited.)

Subordinate agents of a corporation have only the powers and can exercise only such powers as are delegated to them by their principals; and a person dealing with a corporation through the agent is bound to take notice of the extent and scope of his powers to bind the corporation.

When the agent or officer of a corporation is the agent of another corporation or person, and there are mutual dealings between the principals, through the intervention of the agent, neither principal is affected with notice of what is known to the officer or agent by virtue of his relation to the other principal. (First National Bank v. Gifford, 47 Iowa, 575; Wickershone v. Chicago Zinc Company, 18 Kan., 418; In re Marseilles, etc., Co., L. R., seventh Ch. App., 161; In re Europera National Bank, L. R., fifth Ch. App., 358; In re Contract Corporation, L. R., 8 Eq., 14; Inerararvily v. National Bank, 139 Mass., 332.)

The knowledge of the officer or agent of a corporation is not the knowledge of the principal unless the agent became possessed of the knowledge within the scope of his agency and while acting for his principal. (Bank of Virginia City v. Craig, 6 Leigh, 399; Louisiana State Bank v. Senecal, 13 La., 525, mar-

ginal top page, 331; Mechanic's Bank v. Schaumberg, 38 Mo., 228; Terrell v. Branch Bank of Mobile, 12 Ala., 552; Custer v. Tompkins Co. Bank, 9 Pa. St., 27; Conger v. Chicago R'y Co., 24 Wis., 157; Bank of Pittsburg v. Whitehead, 10 Watts, 397; Housman v. Girard, etc., Association, 81 Pa. St., 256; National Bank v. Norton, 1 Hill, N. Y. Rep., 572; Bank of the United States v. Davis, 2 Hill, 351; Story on Agency, sec. 140; Morse on Banks and Banking, second edition, 125 et seq.; Porter v. Bank of Rutland, 19 Vt., 410; Fulton Bank v. New York and Sharon Coal Co., 4 Paige, 127.)

The mere fact that Nichols was a director and vice president of appellant during the happening of the matters and things in controversy will not charge the bank with the knowledge acquired by him relative to said matters unless he acquired said knowledge in the performance of some official duty to appellant. (First National Bank of Highstown v. Christopher, 40 N. J. L., 435; Lomis v. The Eagle Bank of Rochester, Dinsey, Ohio Sup. Ct. Rep., 285; Commercial Bank v. Cunningham, 24 Pick., 274; Terrell v. Branch Bank of Mobile, 12 Ala., 502; Louisiana State Bank v. Senecal, 13 La., 525.)

Where money is deposited by a person in his own name, and there is no notice to the bank that any other person has any right, title or interest in it, the bank is bound to honor the drafts drawn by the depositor against the fund until it has notice that some other person claims the money by superior title, and intends to enforce the claim adversely to depositor. (Frazier v. Erie Bank, 8 W. & S., 18; Farmers and Mechanics National Bank v. King, 57 Pa. St., 202; Sims v. Bond, 5 B. and Ad., 369, Penell v. Defell, 4 De G. Mac. and G., 372; Bridgman v. Gill, 24 Beav., 302; Morse on Banks and Banking, page 300 second edition.)

*Hogsett & Greene*, for appellee: Nichols's declarations were proper to show as against himself he was not the owner of the note, and being payee of the note and having indorsed it in blank, the declarations were competent to show to whom it was indorsed.

2. His declarations were competent, being made at the time he, as receiving teller of the bank, received the note back for collection to show notice to the bank of the ownership of the note. Notice to an officer of the bank is notice to the bank. (Wade on Notice, sections 682, 683.) The check that paid the

note was payable to appellant, passed into the hands of appel-
lant's clearing clerk, who presented it to the bank on which it
was drawn, and, after stamping it with the clearing stamp of
appellant, got the money. Appellee submits that in the case
of Merchants Bank v. State Bank (10 Wall., U. S., pages 644 to
650), all the legal propositions involved in this case are dis-
cussed and decided.

MALTBIE, PRESIDING JUDGE. John Nichols was the receiving
and paying teller, also a director and vice president of appel-
lant, the City National Bank, of Fort Worth, and died insolvent
on the seventeenth day of August, 1885, a defaulter to the bank
in the sum of thirty thousand dollars. During the year 1884,
and up to the time of Nichols's death, the appellee, D. C. Mar-
tin, was a customer of the bank, and in the month of December
deposited with it the sum of one thousand eight hundred dollars,
Nichols receiving it for the bank. At the time of making this
deposit, Martin requested Nichols to assist him in making a loan
of this money. In January, 1885, Martin called at the bank,
and was informed by Nichols, who was then occupying his
place as teller, that he had loaned one thousand five hundred
dollars of the money, and at the same time exhibited to Martin
a note for that amount, signed by Boaz & Battle, payable to
John Nichols or order, at appellant bank, indorsed by Nichols
and others in blank. Martin directed Nichols to hold it for
collection, the understanding of Martin being that Nichols was
to hold the note in his capacity of agent of the bank. On the
twenty-seventh of June, Boaz & Battle called on Nichols at the
bank and gave him a check on the Traders National Bank,
payable to the order of appellant, for the sum of one thousand
five hundred and eighty-three dollars and fifty cents, in payment
of their note and accrued interest. This check was paid to the
bank on the twenty-ninth. Nichols received the check from
Boaz & Battle, and delivered their note to them. Nichols then
made a deposit check in his own name for the amount of the
check so received, and caused the same to be entered on the
books of the bank to his individual credit. The bank never
accounted to appellee for this note or the one thousand five
hundred dollars that Nichols claimed that he had advanced of
appellee's money for the note. After these transactions had
occurred, appellee, not knowing of them, authorized Nichols to
extend the time of payment of the note till fall, upon payment

of the interest. Soon after this, Nichols represented to appellee that he had collected the interest and extended the time of the payment of the note. Appellee, upon the strength of these representations, drew several small drafts on the bank for the interest that he supposed had been collected on the note, which were paid by Nichols and suppressed without being reported to the bank. No officer of the bank except Nichols was informed of any of these matters; but appellee did not discover that there were irregularities about the transactions until after the death of Nichols. Upon this state of facts the court rendered judgment in favor of appellee for the amount of the note and interest.

It is no part of the business of a bank to loan money for the public or for individuals, and in the absence of proof that appellant was engaged in such business, it must be presumed that Nichols, in making the loan of appellee's money, was acting outside of the scope of his authority as agent of the bank, and no liability would attach to the bank for the acts of Nichols in making the loan. In this case the complaint is not in reference to the making of the loan, but that the proceeds of the loan was appropriated by the bank to its own use after it had notice through Nichols that the money belonged to appellee. It is insisted, in the first place, that there is no competent evidence that the note in controversy was the property of appellee; and in the second place, it is insisted that if the note was shown to belong to appellee, that there is no evidence that appellant had notice of this fact, and that it had a right to apply the money in its possession to the credit of Nichols in payment of his defalcations. The declarations of Nichols at the time he exhibited the note to appellee were not objected to, so far as the record shows, and it must be considered by this court that no objection was made in the court below, though it is claimed in the brief of counsel that there was; and any objections that could have been made to the admission of the evidence must be held to be waived. Parties have the right to object or not, as they may see fit, to the admission of testimony that may be offered during the progress of a trial; if they fail to do so, the testimony is to be weighed by the court or jury, and such probative force should be given to it as it may be entitled to. Any other rule would lead to great confusion and uncertainty in determining causes upon appeal.

The question then is, was the evidence sufficient to satisfy a

reasonable mind that the note was the property of appellee? Nichols certainly knew to whom the note belonged. It was payable to his own order, and indorsed by himself in blank. The declarations of Nichols were corroborated by Boaz & Battle to the extent that at the time the loan was made Nichols stated to them that the money belonged to an outside party; so there can be no doubt of the sufficiency of the testimony on that point. The note about which the declaration was made then being in the possession of Nichols, and payable to his order, the presumption was that it belonged to him, and for that reason the declaration was against his interest when made, and he having competent knowledge of the subject and having been shown to be dead, the evidence was admissible on this ground. (1 Greenleaf on Evidence, p. 198, sec. 147.) At the time of these declarations appellant had no interest in the subject matter, but its claim attached long subsequent thereto.

It clearly appears from the testimony that appellee was the owner of the note, and that he delivered it to Nichols as agent of the bank for collection. It was objected that Nichols had no authority to receive the note for collection in behalf of the bank, his business as teller being to receive and pay out money over the counter. Let it be conceded that the duties of a teller by the rules of banking are thus limited; it was shown that Nichols on other occasions had made collections for the bank. But if it had not been shown, it is a well acknowledged fact that the collection of money for others is a part of the regular business of all banks, and when a bank opens its doors for business with the public, and places officers in charge, persons dealing with them in good faith, and without any notice of any want of authority in such officer, and the act done is in the apparent scope of the officer's authority, whether the officer was actually clothed with such authority or not, the party so dealing would be protected. (Merchants Bank v. The State Bank, 10 Wallace, 650.)

If a bank does not wish the public to deal with any particular one of its officers, at the regular place of business, in a particular line of that business, it would be its duty to so notify the public in some effectual way. The public certainly could not be expected to know, without being informed, that a person that was in the habit of daily receiving and paying out money in sums great and small had no authority to receive a note for collection, or receive the money for it when offered at the

counter. It may be that no one except the bill collector was authorized to make collections in this bank, or to receive notes for collection. Still, it would be most unreasonable that an ignorant third party, who had acted in good faith, should suffer in consequence of this rule. At the time Nichols received payment of the note in controversy he was acting for appellant, in the apparent scope of his authority, and knew to an absolute certainty that the money belonged to appellee. The knowledge of Nichols, we think, under the circumstances, must be imputed to the bank; and, having held him out to the world as worthy of confidence, it would be monstrous to allow it to profit by the frauds that he was thus enabled to perpetrate. There is no doctrine of the law better settled than that a corporation or other person is liable for the frauds of its agents, perpetrated in the scope, or apparent scope, of their authority. if the bank had have received the money without being chargeable with notice that it belonged to appellee, it might have been entitled to hold it; but such is not the case, and we think the judgment should be affirmed.

*Affirmed.*

Opinion adopted May 8, 1888.