THOMAS J. SMITH, ADMINISTRATOR OF PETER H. WYCKOFF, DECEASED, PLAINTIFF IN ERROR, v. THE ELIZABETHPORT BANKING COMPANY, DEFENDANT IN ERROR.

Argued March 4, 1903—Decided June 15, 1903.

In a suit against a bank, a gratuitous bailee, to recover the value of securities left with it, and which have been stolen by one of its employes, a want of ordinary care on the part of the bank not appearing, the bank is not liable for the loss of the plaintiff.

On error to the Supreme Court.

For the plaintiff in error, *C. Addison Swift* and *George R. Brisbor.*

For the defendant in error, *Patrick H. Gilhooly* and *Richard V. Lindabury.*

The opinion of the court was delivered by

VAN SYCKEL, J.    This suit was instituted to recover of the defendant bank the value of three $1,000 government bonds, which, it is alleged, were deposited by the plaintiff's intestate with the bank for safe-keeping.

The bonds were purchased by Wyckoff through Walter O. Smith, the defendant's cashier, and paid for by Wyckoff's check, payable to the order of Smith as cashier.

At the request of Wyckoff the bonds were placed by Smith in the safe of the bank in March, 1895, in a sealed envelope.

Wyckoff died in August, 1898, and soon thereafter Thomas J. Smith, his administrator, called at the bank and looked at the bonds, and, at his request, they were left at the bank.

No charge was made for keeping the bonds in the safe of the bank, and no coupons were cut from the bonds before they disappeared.

These bonds were the only securities ever taken on deposit for anyone. The cashier never reported to the directors or to any officer of the bank that he had deposited these securities in the safe, and they had no knowledge of such deposit.

The bank was organized in 1889, and never did a safe deposit business until its charter was amended in July, 1900.

Prior to 1900 there was no express authority contained in the charter of the bank to receive valuables for safe-keeping, either for hire or gratuitously, and no such authority was expressly given to the cashier, or known to have been exercised by him.

Prior to July, 1900, the bank had no vault and only one safe. These bonds were placed by the cashier in the burglar-proof compartment of the safe, where the securities and money of the bank were kept. This compartment was required to be kept open during business hours, and therefore the employes of the bank could not be excluded from access to it.

After July, 1900, when the bank was moved to new quarters, the clerks did not have access to the vault.

One Schrieber, an employe of the bank, went on his vacation in August, 1900. He failed to return to the bank, and this led to the discovery that he had stolen $108,000 of its funds, together with the plaintiff's bonds.

Schrieber had been in the service of the bank for eleven years, and, so far as appears, the officers of the bank had no cause to question his integrity.

Whether the bank, while these bonds were in its safe, had authority to take such securities for safe-keeping, or whether the cashier, as the representative of the bank, could receive them without express instructions from the directors of the bank, so as to charge the bank with the liability of a gratuitous bailee, are questions in regard to which no opinion is intended to be intimated.

Conceding that the bank was a gratuitous bailee, we think that the evidence fails to show, on the part of the bank, any want of the ordinary care which the law exacted of it in that relation.

VOL. XL. 19

The bonds were deposited in the most secure place in the banking-house. When they were stolen does not appear, but manifestly it was before removal to the new banking-house, and it may have been the first peculation of Schrieber.

There was, so far as appears, no circumstance to lead the bank to distrust him, and the depositor, with respect to his bonds, equally with the bank as to its funds, assumed the risk of loss by dishonesty of the clerk.

The case was bare of testimony from which the jury could infer negligence, and therefore a verdict for the defendant was properly directed by the trial court.

The judgment below should be affirmed.

DIXON, J. (dissenting). The testimony in this case makes it quite clear that, if the bonds were in possession of the defendant after the bank was moved to new quarters, in July, 1900, then they were not kept in the vault where the defendant kept its own securities, and should have kept these bonds. As Schrieber, the defendant's employe, who stole the bonds, did not leave the bank until about the middle of August, 1900, I think it is inferable that he did not steal them until that time, and the question whether such an inference should be drawn ought to have been submitted to the jury. If drawn, a verdict for the plaintiff would have been lawful.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRISON, GARRETSON, HENDRICKSON, PITNEY SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM. 12.

*For reversal*—DIXON. 1.