**HALL, Com'r of Insurance and Banking, et al. v. CONAWAY et al. (No. 1501.)**

(Court of Civil Appeals of Texas. El Paso. June 7, 1923.)

**1. Banks and banking ⊨112—Hypothecation by cashier of bonds merely held for depositor renders bank liable for conversion.**

Where a bank cashier improperly hypothecates bonds which the bank is holding through its correspondent merely as a depositary, the bank is liable to the owner of the bonds for conversion.

**2. Banks and banking ⊨15—Bank liable for conversion of bonds deposited with it cannot by issuing deposit slip entitle depositor to reimbursement as protected depositor from state guaranty fund.**

Where a bank because of unlawful hypothecation of bonds in its possession by its cashier has become liable for the conversion of such bonds to the owner, it cannot, by issuing a deposit slip to its creditor and crediting him with the amount of the debt, entitle him to reimbursement as a protected depositor from the state guaranty fund upon subsequent insolvency of the bank.

**3. Banks and banking ⊨15—Status of protected depositor under guaranty fund not impaired by unauthorized act of bank.**

The status of a depositor who is entitled to protection under the state guaranty fund is not affected by the unauthorized cancellation of his credit by the bank.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Action by W. B. Conaway, guardian, and others, against the Farmers' & Merchants' State Bank of Gustine, and Ed Hall, Commissioner of Insurance and Banking, and others. Judgment for named plaintiff, and named defendants appeal. Reformed and affirmed.

W. A. Keeling, Atty. Gen., John W. Goodwin and W. Hawkins, Asst. Atty. Gen., and Callaway & Callaway, of Comanche, for appellants.

Smith & Woodruff and Jerome P. Kearby, all of Comanche, and Love, Wagner & Wagner, of Houston, for appellees.

HIGGINS, J. There are a number of parties and cross-actions in this suit, but the questions presented by the appeal arise upon the issues between the appellee Conaway, as guardian, plaintiff in the court below, and the appellants, Farmers' & Merchants' State Bank of Gustine, Tex., and Ed Hall, Commissioner of Insurance and Banking of the State of Texas.

For the purposes of this appeal the case may be thus stated:

Conaway, as guardian, had on deposit an amount in excess of $23,118.40 with the Gus-

tine Bank. The Houston National Exchange Bank of Houston, Tex., was a depositary of the Gustine Bank.

About December 22, 1919, the Gustine Bank at the instance of and for Conaway, as guardian, purchased from Nauhaus & Co., brokers in Houston, Liberty Bonds of the par value of $25,000 for $23,118.40. These bonds were delivered to the Houston Bank by the brokers, and upon the instruction of the Gustine Bank the Houston Bank received the bonds, charged the account of the Gustine Bank with the purchase price, and issued its receipt therefor, dated December 29, 1919, in favor of the Gustine Bank, and sent the receipt to the Gustine Bank. The Gustine Bank instructed the Houston Bank to hold the bonds in their vault for safe-keeping until further notice. The Gustine Bank thereupon, by its cashier, Dillard, delivered the receipt of the Houston Bank to Conaway with a written statement that the Gustine Bank did not own any interest in the bonds and that they were the property of Conaway, guardian. At the same time the Gustine Bank charged Conaway's account with the purchase price of the bonds.

Subsequently Dillard retired from the active management of the Gustine Bank and was succeeded by A. A. Kelley, who became its vice president and managing officer. Subsequently Kelley undertook to obtain a personal loan from the Houston Bank, offering to pledge the Liberty Bonds as collateral. The Houston Bank declined to make the loan upon such collateral because the bonds belonged to the Gustine Bank, but upon the receipt of a letter dated December 15, 1920, purporting to be signed by Dillard, as cashier, the Houston Bank made the loan and accepted the bonds as collateral. The Houston Bank had no notice that Dillard had retired as an officer of the Gustine Bank. The letter of December 15th reads as follows:

"Dec. 15, 1920.

"Mr. Aug. DeZavala, Vice Pres., Houston Natl. Ex. Bank, Houston, Texas—Dear Mr. DeZavala: You will kindly deliver to Mr. A. A. Kelley, the '$25,000.00 in Liberty Bonds that you are holding for our account. The receipt that you mailed us has been misplaced and this letter will serve to protect you against further claim in any way. Mr. Kelley is at liberty to use these bonds in any way that he sees fit.

"Yours truly,      A. J. Dillard, Cash."

Subsequently Conaway in ignorance of of what had transpired undertook to have the bonds registered, and thereupon, about February, 1921, discovered that they had been misappropriated in the manner indicated. He demanded of Kelley the bonds, who confessed the misappropriation, stating that the Gustine Bank had used them to procure money to assist it out of a tight place. Whereupon, in settlement of Conaway's demand, Kelley agreed to credit Conaway upon the books of the Gustine Bank with $23,118.40 as a deposit, which was done and deposit slip issued accordingly. In making this settlement Kelley acted without authority from the board of directors.

A short time later, at the insistence of a bank examiner, the credit thus extended upon the books was canceled. Shortly thereafter the bank was closed by the Commissioner of Insurance and Banking, who assumed charge, and the same is in process of liquidation by the Commissioner. This litigation then arose, Conaway seeking to establish his claim in the sum of $23,118.40 against the Gustine Bank and against the Commissioner as a deposit secured by the depositors' guaranty fund of the state of Texas.

Judgment to that effect was rendered by the lower court, from which the Gustine Bank and the Commissioner appeal.

## Opinion.

Appellants present a number of assignments and propositions, all of which have been considered and are regarded as without merit except as hereinafter indicated.

The controlling issues in the case are limited, and the discussion will be confined thereto.

Upon the facts stated it is clear the bonds became the property of Conaway, and the original deposit made by him no longer existed as a deposit after his account was charged with the purchase price in December, 1919.

[1] Upon the hypothecation of the bonds by Kelley the Gustine Bank became liable to Conaway as for conversion. This is true whether the conversion by Kelley was for his own personal benefit or not. The bank in either event is liable for his conduct in converting securities intrusted to it for safe-keeping. City Nat. Bank of Fort Worth v. Martin, 70 Tex. 643, 8 S. W. 507, 8 Am. St. Rep. 632; First State Bank of Seminole v. Shannon (Tex. Civ. App.) 159 S. W. 399.

[2] As to the right of Conaway to have his claim established as a valid demand against the depositors' guaranty fund, this presents a very different question.

The Bank Deposit Guaranty Law is intended to protect bona fide deposits of the members' banks which are noninterest bearing and otherwise unsecured. Article 486, R. S. It is in no wise intended to secure the payment of other unsecured debts of the member banks, whether they arise upon contract or tort. It would be difficult, if not impossible, to formulate a general rule which would definitely fix the status of different transactions as constituting deposits within or without the protection of the law. This is true because a valid deposit within its protection may be effected in different ways. Each case in large measure will depend upon its own facts.

As we regard this case, the title to the bonds purchased from Nauhaus & Co. vested in Conaway when his account with the Gustine Bank was charged with the purchase price and the receipt and statement evidencing his ownership delivered to him. The fund of $23,118.40 then completely lost its status as a deposit. The Gustine Bank then became the bailee of the bonds, holding possession through its correspondent and depositary, the Houston Bank. Upon the conversion by Kelley the Gustine Bank became liable for the value thereof. The relation of bailor and bailee thus changed to that of debtor and creditor upon a demand arising in tort. In settlement of this demand Kelley undertook to create the relation of debtor and creditor as in the case of an ordinary deposit. Waiving the question of the binding effect of his action upon the bank to make such settlement in the absence of authority from the board of directors, we are of the opinion that it was wholly ineffective against the depositors' guaranty fund. The assets of the bank were not increased a penny by the transaction. The entry of credit as a deposit upon the bank's books and the issuance of the deposit slip in favor of Conaway amounted to no more than a mere change in the evidence of the bank's indebtedness to Conaway arising out of the conversion of his securities. So far as concerns the depositors' guaranty fund, it stands upon no higher footing than it would if the settlement had been effected by the bank issuing its promissory note for the amount due. Had the settlement been effected by such means, it could not for one moment be contended that the payment of the note would be secured by the fund.

If the claim of Conaway be held to be secured by the fund, then it will be possible for an insolvent or failing member bank to secure the payment of all of its outstanding obligations of every character, out of the depositors' guaranty fund by the simple expedient of giving to the holders of its obligations credit upon its books as depositors and issuing deposit slips to them. Mere bookkeeping entries cannot thus change the relation of the holder of such obligations towards the depositors' guaranty fund and entitle them to the benefit thereof. We are therefore of the opinion that Conaway has no claim against the depositors' guaranty fund, and in this respect the judgment of the court below is erroneous.

[3] Some question is raised respecting the subsequent cancellation of the credit extended to Conaway as a depositor upon the bank's books. No importance is attached to this cancellation. If he acquired the status of a protected depositor when he made the settlement with Kelley, it could not be impaired by the subsequent cancellation without his consent. We have found no case directly supporting the views expressed, but in support generally thereof, see: Lankford v. Schroeder, 47 Okl. 279, 147 Pac. 1049, L. R. A. 1915F, 623; Fourth Nat. Bank of Wichita v. Wilson, 110 Kan. 380, 204 Pac. 715; American State Bank v. Wilson, 110 Kan. 520, 204 Pac. 709.

Upon the views indicated it follows that Conaway is entitled to judgment against the Gustine Bank in the sum of $23,118.40, with interest, and against the Commissioner directing that the same be classified as an unsecured claim and paid as such in the process of liquidation, and, further, that Conaway take nothing by his suit against the Commissioner to enforce his claim as a deposit secured by and entitled to payment out of the depositors' guaranty fund of the state of Texas.

The judgment of the court below will be reformed in the manner indicated. In all other respects the judgment will be affirmed.

Reformed and affirmed.