## FIRST NAT. BANK OF COLEMAN v. FIRST NAT. BANK OF BROWNWOOD.
(No. 553—4292.)

(Commission of Appeals of Texas, Section B. Dec. 10, 1925.)

**1. Banks and banking ☞102—Authority of maker of draft to bind payee thereof held immaterial in absence of exercise thereof.**

Where bank payee of draft with note attached redelivered it to maker thereof, maker's apparent authority to bind payee and its interest in draft and note in dealing with defendant bank were immaterial, in absence of exercise of such authority.

**2. Bills and notes ☞338—Correspondent bank held not to have acquired draft and note as bona fide holder.**

Where bank to which draft was payable turned it over to maker for delivery to correspondent bank, and latter did not on authority of maker deliver attached note to third person, it did not acquire another draft presented by such third person with note attached in due course of business, and without notice of lack of authority on its part to collect proceeds of draft and note for its own use.

**3. Banks and banking ☞171(2)—Correspondent bank, by failure to comply with instructions as to draft, held liable for loss occasioned.**

Where payee bank acquired draft with note attached as purchaser and forwarded it to correspondent bank with particular instructions to permit third person to inspect papers, and then to present draft for collection and remit, correspondent bank became agent and assumed responsibility as such to follow instructions, and violation thereof rendered it liable for loss sustained.

**4. Bills and notes ☞345—Correspondent bank held put on inquiry and notice of conflict between instructions and demand for proceeds of note attached to draft.**

Where plaintiff bank acquired draft with note attached, as purchaser, and forwarded it to correspondent bank with instructions to permit third person to examine papers, and, on return of papers to plaintiff, latter redelivered them to maker of draft with directions to turn them over to correspondent bank, and same were delivered as property of plaintiff, such fact was sufficient to put correspondent bank on inquiry and notice of conflict between instructions by plaintiff and demand of third per-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

son that proceeds of note which he attached to different draft and presented should be credited to him.

**5. Customs and usages ⟜21—Evidence held insufficient for jury on issue of bank's custom to give credit on drafts.**

Evidence, as to custom of local banks to give credits on drafts drawn with note attached, to holder of drafts, *held* insufficient to authorize submission thereof to jury.

**6. Customs and usages ⟜3—Usage should be established by clear and satisfactory evidence.**

A usage to be binding should be definite, uniform, and well-known, and should be established by clear and satisfactory evidence, so it may be justly presumed that parties had reference to it in making their contract.

**7. Banks and banking ⟜161(2)—Defendants not authorized to follow custom in face of plain instructions.**

Even though there may have been a custom of local banks to give credit on drafts with note attached to holder of draft, bank was not authorized to follow it in face of plain instructions to the contrary in writing by owner of note.

**8. Banks and banking ⟜175(4)—Refusal to submit to jury question of bank's authority to deliver note to third person not erroneous.**

Where payee of draft with note attached intrusted same to drawer and it appeared without dispute that he authorized correspondent bank to deliver papers to third person on taking his receipt and that bank did not intentionally deliver or take receipt for note which third person attached to another draft and deposited to his own credit, there was no necessity for submission of defendant's requested question whether bank delivered note to third person, or whether drawer authorized such delivery.

**9. Principal and agent ⟜108(3)—Mere possession of draft held under facts not to raise presumption of authority to demand delivery of proceeds.**

Where payee bank acquired draft with note attached as purchaser and forwarded it to correspondent bank with instructions to permit third person to inspect papers and, on return of papers to payee, latter intrusted them to drawer, who instructed correspondent bank to deliver note to third person and take receipt therefor, and third person attached note to another draft, payable to correspondent bank, mere possession of draft by third person did not raise presumption of implied or apparent authority in him to demand of bank delivery to him of proceeds.

**10. Banks and banking ⟜171(2)—Correspondent paying third person who attached note to new draft held liable.**

Where banks, payee and purchaser of drafts with notes attached, intrusted them to maker to show to H. and then deliver them to its correspondent, who had been instructed concerning their collection, and H. induced drawer to make new draft for amount of one note payable to correspondent, and having obtained pos-session of the note, deposited it and the new draft to his own credit, correspondent was liable for paying proceeds to H. without instructions from drawer or payee, as draft on its face required proceeds to be placed to drawer's credit.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the First National Bank of Coleman against the First National Bank of Brownwood and J. W. Gates, in which defendants filed cross-actions against each other. Judgment for plaintiff and judgment for second defendant against first defendant were affirmed in part and reversed in part, and remanded by the Court of Civil Appeals (264 S. W. 1020), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed. Judgment of district court affirmed.

Snodgrass, Dibrell & Snodgrass, of Coleman, for plaintiff in error.

G. N. Harrison, of Brownwood, E. H. Cavin, of Houston, and Critz & Woodward, of Coleman, for defendant in error.

Wilkinson & McGaugh, of Brownwood, for Gates and others.

SHORT, J. This suit was originally brought in the district court of Coleman county, and the venue was afterwards changed to Brown county. On the 30th day of March, 1917, J. W. Gates and his wife, Alice E. Gates, being the owners of 625.6 acres of land in Coleman county, had negotiated a loan from the Bankers' Loan & Securities Company at Fort Worth, giving the land as security, and evidencing the transaction by certain negotiable promissory notes signed by Gates and wife and the execution and delivery of a deed of trust on the land to secure the payment of said notes at the several times of their maturity. Among these notes were three, one of which was given for $5,000, another for $4,000, and another for $3,500, payable to the Bankers' Loan & Securities Company. The plaintiff in error, the First National Bank of Coleman, where Gates lived, was his local bank. This loan appears to have been negotiated for Gates by one B. E. Hurlbut, who was an abstracter and loan agent living at Brownwood in Brown county. Gates took these three notes to his local bank and drew in favor of said bank, the plaintiff in error here, on an ordinary customer's form, three drafts in favor of the plaintiff in error on the Bankers' Loan & Securities Company for the respective amounts of each note, attaching these drafts to these notes respectively. The plaintiff in error then entered upon its books a credit in favor of Gates for the full amount of the notes and sent the notes with the drafts attached to its regular correspondent, the defendant in error the Brownwood National Bank, with a letter of instructions to

allow Mr. Hurlbut to inspect the papers before forwarding them to Fort Worth. This was done on April 7, 1917.

The defendant in error received these papers comprising seven in number, to wit, the three notes, the three drafts, and the letter of instructions. In accordance with the instructions given, the defendant in error called Hurlbut's attention to the papers, who, after looking at them, expressed a wish to take them from the bank. This the defendant in error declined to allow him to do; whereupon, Hurlbut told the defendant in error to return the papers and he would communicate with Mr. Gates further about them. The defendant in error did return the papers to the plaintiff in error, but without any explanation. Whereupon, the cashier of the plaintiff in error called up the defendant in error by telephone and asked for the reason why the papers had been returned. The defendant in error explained that Hurlbut wanted to take the papers out of the bank and that the defendant in error was unwilling to trust the papers in Hurlbut's possession. Whereupon, the cashier of the plaintiff in error stated that inasmuch as the defendant in error would not trust Hurlbut, it was unwilling to risk the possession of the papers with him, but that Mr. Gates would be seen about it. Gates was seen, and in the conversation Gates proposed to take the papers to Brownwood and allow Hurlbut to inspect them in his presence and then to redeliver them to the defendant in error, to which the plaintiff in error agreed. So, the plaintiff in error delivered the package of papers to Gates, who did go to Brownwood, and after allowing Hurlbut to inspect the papers, he and Hurlbut went to the defendant in error bank and made a redelivery of the package of papers, stating that Mr. Hurlbut was assisting him in securing a loan on his land, and Hurlbut being present assented to this statement. This was on the morning of the 10th of April, 1917. In the meantime, Hurlbut had informed Gates that the Brownwood bank could not handle the $3,500 note with the draft attached in favor of the plaintiff in error drawn as it was, because it was a cash item, and requested Gates to draw a draft on the Bankers' Loan & Securities Company for $3,500, payable to the defendant in error, which Gates did, together with his wife, and instructed Hurlbut to use either one of the drafts which would get the money for him. This draft was in Hurlbut's possession at the time that the package of papers was redelivered by Gates to the defendant in error, but the existence of this draft was unknown to the defendant in error as well as to the plaintiff in error.

On the same day, that is to say, on the 10th of April, 1917, some time in the evening when there were several people in the bank transacting business, Hurlbut appeared at the cashier's window of the defendant in error and presented this draft drawn in favor of the defendant in error by Gates and wife, to which was attached the note which Gates had originally attached to the original draft drawn in favor of the plaintiff in error, and asked that the draft be cashed and that his account be given credit with the proceeds, at the same time demanding and receiving a deposit slip showing that fact. The cashier merely looked at the draft without examining any other paper attached to it and complied with the request. On the 11th day of April, 1917, the defendant in error having forwarded this particular draft with the note attached to its correspondent at Fort Worth, the same was presented to the Bankers' Loan & Securities Company and paid; the note accompanying it being retained by the loan company.

Hurlbut committed suicide on account of financial difficulties on the 18th day of May, 1917, having in the meantime withdrawn from the defendant in error bank substantially all of the proceeds of this note. The other two notes with the respective drafts attached had been approved by Hurlbut and forwarded to Fort Worth, where they were duly paid and the proceeds of the payment were remitted by the defendant in error to the plaintiff in error, but for some reason not explained by the record no investigation was made with reference to the $3,500 note and the draft attached until after Hurlbut's death, when the facts above related were made known to the plaintiff in error and a demand was made by the latter upon the defendant in error for this sum, which demand having been refused, suit was instituted by the plaintiff in error against the defendant in error and Gates.

A trial was had to a jury upon special issues, and upon the jury's answers, judgment was rendered in favor of the plaintiff in error against the defendant in error for the amount of the note and interest as well as against Gates and judgment over in favor of Gates against the defendant in error, from which judgment the defendant in error appealed to the Court of Civil Appeals, which, upon consideration of the case, reversed and remanded the judgment of the trial court in so far as it affected the defendant in error.

The findings of the jury in answer to several special issues submitted to them are as follows: (1) That the plaintiff in error received the draft payable to it as purchaser; (2) that drafts and papers redelivered to Gates by plaintiff in error were not so redelivered as his property; (3) that Robertson (defendant in error's cashier) at the time he accepted from Hurlbut the $3,500 draft, payable to the order of defendant in error, believed that Hurlbut was authorized by Gates and wife to direct the disposition of its proceeds; (4) that Gates, when he delivered to Hurlbut the $3,500 draft, payable to defendant in error, knew that if Hurlbut

got possession of the $3,500 note and attached it to said draft he could, by presenting the draft and note to the defendant in error, obtain the money thereon; (5) that defendant in error, in accepting from Hurlbut the draft payable to its order and crediting Hurlbut's account with its amount, acted in accordance with the general custom and usage of banks and bankers in handling such transactions; (6) that Robertson, when he accepted the $3,500 draft from Hurlbut, in good faith believed Hurlbut was its owner; (7) that it was not agreed between plaintiff in error and Gates when the latter was given credit for the three drafts that Gates should not check against the deposit until the drafts were paid; (8) that the defendant in error had knowledge when it gave credit to Hurlbut for the $3,500 that the draft drawn in favor of it for such amount was drawn to get money belonging to Gates from the Bankers' Loan & Securities Company on the note executed by Gates and wife originally attached to the draft drawn in favor of the plaintiff in error for a like amount; (9) that the defendant in error, by the use of reasonable diligence at the time it gave Hurlbut credit for the draft, could have ascertained that the purpose of its being drawn was to get money belonging to Gates from the Bankers' Loan & Securities Company on said note; (10) that said note was delivered by Gates to defendant in error at the time he delivered to the latter the $3,500 draft payable to the plaintiff in error; (11) that at the time of the transaction, Gates knew of the custom mentioned in the answer relating thereto.

The Court of Civil Appeals reversed the judgment of the trial court and remanded the case for another trial on account of the refusal by the trial court to submit the requested instructions by the defendant in error as follows:

"Did Vaughn Ray (one of defendant in error's agents) deliver to B. E. Hurlbut the $3,-500 note mentioned in the testimony of this case?"

"Did, J. W. Gates authorize the Brownwood National Bank or Vaughn Ray to deliver to B. E. Hurlbut possession of such of the papers delivered by Gates to said Vaughn Ray in said bank as he, the said Hurlbut, might wish to have in consummating the loans the Bankers' Loan & Securities Company of Fort Worth was making said Gates and wife?"

"Did Vaughn Ray deliver said $3,500 note to B. E. Hurlbut because of such authorization by the defendant Gates?"

The application by the defendant in error for the writ of error embraces 87 pages of manuscript and 24 assignments of error are presented. Manifestly, to state and discuss separately each of these assignments of error would extend this opinion beyond a reasonable length, especially since we have concluded that the vital questions presented to this court for decision are very few, and the discussion of them does not require a full statement of all the assignments of error.

[1] The Court of Civil Appeals concluded that it is immaterial whether the plaintiff in error acquired the $3,500 draft as a purchaser at the time of its original delivery to it, and also whether it was agreed between Gates and the plaintiff in error that the former should not draw against the credit given him on account of the draft until the draft was paid, and also that when the draft with the note attached was forwarded by the plaintiff in error to the defendant in error, the latter had no alternative after accepting the draft for collection, as it did accept, but to follow instructions and remit the proceeds of the draft when collected to the plaintiff in error; and also that it is immaterial what particular instructions the plaintiff in error may have given to Gates when the papers were redelivered by it to him, or what, if any, conditions were attached to said redelivery. We do not agree with the statement made in this connection by the Court of Civil Appeals that Gates had apparent authority to bind the plaintiff in error and its interest in the note and draft in dealing with the defendant in error. We will incidentally discuss this question later. It may be said in passing, however, that according to the testimony as well as the findings of fact by the jury and those presumed to have been found by the trial judge as a basis for the judgment rendered in favor of the plaintiff in error, Gates did not attempt to exercise any authority to bind the plaintiff in error and its interest in the note and draft in dealing with the defendant in error, and even if he had had such authority, in the absence of its exercise, the having of it would become immaterial. The Court of Civil Appeals very correctly says that—

"It is admitted by all parties to the appeal that neither of the $3,500 drafts would have been paid by the loan company unless accompanied by the $3,500 note, and that there would have been no use made by Hurlbut of the draft in favor of the Brownwood bank, unless he acquired possession of the note so that he could attach it to the draft. In other words, it is conceded by all the parties that neither of the drafts had any practical value without the note."

[2] The Court of Civil Appeals assumed in its opinion that Gates authorized Ray, the agent of defendant in error, to deliver the note to Hurlbut, and that Ray, in pursuance of that authority, so delivered it. An investigation of the statement of facts shows that Gates authorized Ray to deliver to Hurlbut any papers which Hurlbut might desire to have in his possession, but at the same time and in the same connection instructed Ray not to deliver any papers to Hurlbut without taking his receipt therefor; and the testimony further shows without dispute that Ray did deliver two papers to Hurlbut and

did take his receipt therefor, neither of which was the note in question. We therefore are of the opinion that the Court of Civil Appeals was in error in assuming that Ray delivered to Hurlbut the note in question by authority of Gates, and in the absence of testimony to support this assumption, the defendant in error, even from the standpoint of the law as announced in the opinion of the Court of Civil Appeals, did not acquire the draft in its favor and the note attached to it in due course of business for value and without notice of any lack of authority on its part to collect the proceeds of the draft and note for its own use and benefit. The Court of Civil Appeals concludes as a matter of law that when a negotiable instrument is drawn in favor of a bank and placed by the drawer in the hands of a third party without instructions to the payee regarding the disposition of the proceeds, and the bank pays the proceeds to the third party, it is protected against the demand of the true owner of the proceeds, citing several cases in support of the correctness of its conclusion. However, the Court of Civil Appeals says that the contrary view is held in several other cases which it also cites. All of these cases are to be found by reference to the opinion of the Court of Civil Appeals, 264 S. W. 1020.

[3] The second assignment of error is to the effect that under the pleadings, the findings of the jury, and the implied findings of the court, no other judgment was proper than that rendered by the trial court. An investigation of the record has convinced us that this assignment should be sustained and renders unnecessary a discussion of the other assignments of error. The jury found that the plaintiff in error became the owner by purchase of the proceeds of the note attached to the draft. Under this finding of fact, the plaintiff in error became entitled to direct the handling of the draft and the note attached. The testimony shows that it did in writing instruct the defendant in error, after giving Hurlbut an opportunity to inspect the papers, to present the draft with note attached to the loan company, collect the money, and remit it in due course of business to the plaintiff in error. The defendant in error having accepted the drafts and the notes attached with these instructions, it thereby became the agent of the plaintiff in error and assumed the responsibility, as such agent, to follow the instructions given by its principal in the handling of these drafts and notes. It is further seen that no other instructions were ever given by the plaintiff in error to the defendant in error with reference to the disposition of this note with the draft attached, and having failed to carry out these instructions, and also having failed to notify the plaintiff in error of the claim of Hurlbut that he was entitled to the proceeds of this particular note by another draft

for a like sum, and having paid the proceeds of this note over to Hurlbut in violation of its instructions, it thereby became liable to its principal for any loss occasioned by its act in complying with the demands of Hurlbut. Barnes v. Cunningham, 193 Ky. 740, 237 S. W. 375. Had the Bankers' Loan & Securities Company, to whom the note was made payable, refused to accept it and to pay the draft attached to it when payment of the same had been demanded of it by the correspondent of the defendant in error bank, under the facts of this case, the defendant in error would not have had any cause of action based upon such refusal coupled with an allegation that it had paid to Hurlbut the money represented by said note for the obvious reason that the defendant in error had violated instructions given to it by the plaintiff in error. We think this possible situation pertinently presents to the mind the invalidity, legally speaking, of every defense set up by the defendant in error, and clearly establishes the right of the plaintiff in error to the judgment rendered by the trial court in so far as the same relates to the defendant in error.

[4] The jury also found as a fact that the papers which were returned to the plaintiff in error by the defendant in error, and which were redelivered by the plaintiff in error to Gates and by Gates redelivered to the defendant in error, were so delivered by Gates as the property of the plaintiff in error. This finding is in harmony with the instructions given by the plaintiff in error to the defendant in error and was sufficient to put the defendant in error upon inquiry and notice of the conflict between its instructions received from its principal and the demand of Hurlbut when the latter demanded that the proceeds of the note attached to the draft which he presented should be credited to his account. The jury also found as a fact that the defendant in error had knowledge that the note attached to the draft had been executed by Gates and wife to get money from the loan company, and this fact, in connection with the fact that the plaintiff in error had become the owner of said draft attached to said note, was an additional sufficient reason why the defendant in error should have refused to comply with the demand of Hurlbut in delivering the proceeds of the note with the draft attached to Hurlbut, when it is remembered that the draft was not payable to Hurlbut but was payable to the defendant in error itself. This is especially true, since the draft without the note had no value. City Nat. Bank v. Martin, 70 Tex. 643, 8 S. W. 507, 8 Am. St. Rep. 632; Arkansas Bank v. Martin, 110 Ark. 578, 163 S. W. 797. If the proceeds of the note and the draft had been the property of Hurlbut, the best evidence of that fact apparently, under the facts upon which the judgment of the trial court is based, would have been a draft

drawn by the plaintiff in error in favor of Hurlbut with the note attached. The fact that the draft was drawn by Gates and wife in favor of the defendant in error and placed by them in the possession of Hurlbut merely made Hurlbut their messenger to deliver to the defendant in error the draft with the note attached for the purpose of collecting from the loan company the money which the loan company had agreed to deliver to Gates or his order, and it has been seen that this order of Gates had been given to the plaintiff in error, of which fact the defendant in error had due notice in writing. Davis v. Sittig, 65 Tex. 497. The jury also found as a fact that this $3,500 note which was the basis of the draft was redelivered by Gates to the defendant in error at the time that the $3,500 draft to which the note was originally attached was delivered. This placed all of the papers back into the hands of the defendant in error which the plaintiff in error had delivered to it for the purpose of collecting from the loan company the proceeds of the three notes attached to the three drafts. In other words, the defendant in error had in its possession, at the time that it delivered the proceeds of the $3,500 note with the draft attached to Hurlbut, the letter of instructions which the plaintiff in error had delivered to it when this particular note and draft, together with the other two notes and the other two drafts, had been sent by the plaintiff in error to the defendant in error, thus and thereby emphasizing the claim of the plaintiff in error that the notes with the drafts attached were its property, and that it had the right to expect and did expect that its instructions with reference thereto should be followed by its agent after its acceptance of the trust.

[5, 6] One of the defenses set up by the defendant in error is that it was the custom of the local banks of that county to give credit on drafts drawn as this one was to persons holding it as Hurlbut was holding this, and the jury found in favor of this defense. But an investigation of the statement of facts shows that there is not sufficient testimony to authorize the submission of the issue, and the finding that such a custom existed is contrary to the testimony and without evidence to support it. A usage to be binding should be definite, uniform, and well-known. It should be established by clear and satisfactory evidence, so it may be justly presumed that the parties had reference to it in making their contract. Bowling v. Harrison, 6 How. 259, 12 L. Ed. 425. The president of the plaintiff in error bank testified that no such custom existed. However, other witnesses did testify that such custom did exist where the party making the deposit and asking the credit was well-known to be financially responsible. As an illustration of the testimony on this subject, we copy the following from the statement of facts given by the witness Brooke Smith, introduced by the defendant in error. After qualifying as to his familiarity with the customs and usages of banks in regard to handling commercial paper, he says:

"If a person residing in an adjoining county who is not a customer of the bank in Brownwood, and who owes the Brownwood bank nothing, and who never has been a customer of that bank, draws a draft, payable to the Brownwood bank, and delivers it to a regular customer of the Brownwood bank who has been doing business with the Brownwood bank for many years and whose reputation for integrity is good, whose financial standing is sufficient to justify credit to the extent of the amount of the draft, and that draft is presented to the Brownwood bank, with a deposit slip, prepared by the party presenting it, showing that the deposit is to be made in his name and to his credit, I would say there is a general custom or usage of banks as to how the deposit should be made; the deposit would be made to the account of the man presenting the draft to the bank and making the request; that custom or usage prevails among the banks of Brownwood; it is not only a general custom, but it is also a custom of the banks in Brownwood."

A mere reading of this testimony, which is as strong as that of any other on this subject, illustrates that the custom of which the witness speaks was neither definite nor uniform, although the jury found that Gates knew of it. The other defenses set up by the defendant in error bank are made sufficiently apparent from what has been said heretofore.

[7, 8] Even though there had been such a custom, the defendant in error would not have been authorized to have followed it in the face of its plain instructions to the contrary given in writing by the owner of the evidence of the right to demand from the loan company this $3,500. But the Court of Civil Appeals in its opinion finds that the trial court erred in refusing to submit to the jury at the request of the defendant in error the question whether Ray delivered to Hurlbut the $3,500 note, and also whether Gates authorized the defendant in error or Ray to deliver to Hurlbut the possession of such papers delivered by Gates to Ray as Hurlbut might wish to have in consummating the loan Gates and wife were securing from the loan company. In the first place, the testimony shows that without dispute Gates did authorize Ray to deliver to Hurlbut any and all papers Hurlbut might wish to have, but attached to this statement was the condition that Hurlbut's receipt should be taken, and the testimony further shows that Ray did deliver to Hurlbut some papers and did take his receipt, and that the note in question was not among them. The record being in this condition, no necessity existed to submit such an issue to the jury; and, moreover, the record being in this condition, there was no basis upon which to present the issue whether Ray did deliver to Hurlbut the note men-

tioned, since it is evident that he did not do so intentionally and consciously, and if he had done so unintentionally and unconsciously, the defendant in error would be liable to the owner of the proceeds of the note on account of the negligence of his agent in failing to carry out the instructions of Gates under the finding on this subject by the jury. So, we are of the opinion that no reversible error was committed by the trial court in failing and refusing to submit either of these issues to the jury involved in these questions, and we are in accord with the judgment of the Court of Civil Appeals that the trial court did not commit any reversible error in failing and refusing to submit to the jury the other questions mentioned in the opinion of the Court of Civil Appeals, and that no other reversible error was committed by the trial court.

[9] We are of the opinion that the mere possession of a draft by C. drawn by A. in favor of B., under the facts of this case, does not raise a presumption of implied or apparent authority in C. to demand of B. the delivery to him of the proceeds of the draft. The great weight of authorities, which we have been able to find and examine, where the point was directly involved, supports a holding that there is no such apparent or implied authority in the holder of such a draft to demand payment to him of the proceeds from the party in whose favor the draft is drawn.

[10] In addition to the findings of the jury and those impliedly found by the trial judge, the draft itself on its face imported to the bank that it was the property of Gates, and giving to the facts found by the jury and the uncontroverted facts disclosed by the testimony the weight to which they are entitled, it is our opinion that the draft itself contained an explicit direction that the proceeds when collected were to be placed to the credit of Gates in trust for the plaintiff in error. Had this been done and Gates had received and appropriated the money wrongfully, we believe still that the plaintiff in error could have held the defendant in error responsible for its failure to obey the instructions given it by the plaintiff in error when it is remembered that the defendant in error had all of the papers in its possession, including the letter of instructions, at the time that this $3,500 draft was presented by Hurlbut. The material facts found by the jury and those undisputed in the record do not warrant the conclusion that the defendant in error was authorized to suppose that Gates by drawing the draft in its favor and placing it in the hands of Hurlbut thereby intended to pay to Hurlbut $3,500 or to place Hurlbut for any purpose in possession of the funds. If Gates so intended, the draft would have been made payable to Hurlbut's order and there would have been no need of the agency in the transaction on the part of the defendant in error.

The use of the defendant in error's name as payee of the check indicated the drawer intended to lodge the money when collected from the loan company in its custody and to place it under its control to be kept until the true owner of it should demand it, and nothing further than this was inferable from the language of the draft under the admitted facts known at the time by the defendant in error. The draft by its term authorized the defendant in error to demand and receive from the Bankers' Loan & Securities Company a certain sum of money for a purpose fully disclosed to the defendant in error by information in its possession at the time. The defendant in error could have refused to have received from Gates the papers or act as his agent in collecting from the aforesaid company the money apparently sought to be collected by means of the draft, but having accepted this trust, it was bound to keep in its custody said money so collected from the said company until it received instructions from Gates and from the plaintiff in error as to its disposition. Had Gates attemped to dispose of the money out of harmony with the instructions given to the defendant in error by the plaintiff in error, then it would have been the duty of the defendant in error to notify the plaintiff in error of the conflict and govern itself according to the facts disclosed by its investigation. Nothing of this sort was done. Hurlbut could not occupy any more favorable position than Gates. Having accepted the agency to collect the draft and deliver the note to the loan company, the defendant in error could not safely pay out the proceeds of the note represented by said funds except under the direction of their lawful owner. In other words, we are constrained to believe that the legal principles involved in this transaction are applicable more to questions of agency than those of commercial law. We believe that the defendant in error was the lawful agent of the plaintiff in error, having full and direct instructions as to what disposition should be made of the note with the draft attached, and having violated those instructions to the detriment of its principal, it is liable for the damage occasioned by its negligence. The following authorities as well as those heretofore cited, support the conclusion we have reached: Commercial Bank v. Jones, 18 Tex. 811; Givens v. Carter (Tex. Civ. App.) 146 S. W. 323; Kuder v. Greene, 72 Ark. 504, 82 S. W. 836; Bristol Knife Co. v. First Nat. Bank. 41 Conn. 421, 19 Am. Rep. 517; Sims v. Trust Co., 103 N. Y. 472, 9 N. E. 605; Bank of Venice v. Clapp, 17 Cal. App. 657, 121 P. 298; Bowles v. Clark, 59 Wash. 336, 109 P. 812, 31 L. R. A. (N. S.) 613; Camp v. Sturdevant, 16 Neb. 693, 29 N. W. 449; Plow Co. v. Davidson, 16 Neb. 374, 20 N. W. 256.

We therefore recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding

the case be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.